IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KERANOS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SILICON STORAGE TECHNOLOGY, | § | |
| INC., et al., | § | |
| | § | Civil Action No. 2:13-cv-17 (MHS) |
| Defendants, | § | |
| Counterclaim-Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| KERANOS, LLC, et al., | § | |
| | § | |
| Counterclaim-Defendants. | § | |

**DECLARATION OF BRIAN C. BANNER**

I, Brian C. Banner, declare and state as follows:

1.     I am an attorney licensed to practice law before all of the Courts of the State of Texas.  I am an attorney with King & Spalding, counsel of record for, *inter alia*, Microchip Technology, Inc. in the above-captioned action.  I have personal knowledge of the facts set forth herein and could competently testify about these matters if called upon to do so.

2.     Attached hereto as Exhibit A is a true and correct copy of *Stambler v. Amazon.com, Inc.*, No. 2:09-cv-310 (E.D. Tex. May 23, 2011) (Folsom, J.).

3.     Attached hereto as Exhibit B is a true and correct copy of Keranos's First Set of Interrogatories to Microchip served on January 21, 2011.

4.     The interrogatories in Keranos's First Set of Interrogatories to TSMC, Toshiba, Samsung, Seiko Epson, and Freescale were identical to those propounded on Microchip and attached hereto as Exhibit B.

5.     Attached hereto as Exhibit C is a true and correct copy of Keranos's First Set of Interrogatories to SST served on April 11, 2012.

6.     Attached hereto as Exhibit D is a true and correct copy of Keranos's Second Set Interrogatories to Manufacturing Entities served on January 10, 2013.

7.     Attached hereto as Exhibit E is a true and correct copy of an email message that counsel for Keranos, John Downing, sent to counsel for Microchip, Brian C. Banner, on February 12, 2013.

8.     Attached hereto as Exhibit F is a true and correct copy of *Rambus Inc. v. Nvidia Corp.*, No. C08-03343 SI (N.D. Cal. Aug. 24, 2011).

9.     Attached hereto as Exhibit G is a true and correct copy of *Orion IP, LLC v. Staples, Inc.*, Case No. 2:04-cv-297 (E.D. Tex. July 7, 2005) (Davis, J.).

10.     Attached hereto as Exhibit H is a true and correct copy of *Superior Commc'ns v. Earhugger, Inc.*, No. CV 08-3088-PA(RCx) (C.D. Cal. Feb. 18, 2009) (Chapman, Mag. J.).

11.     Attached hereto as Exhibit I is a true and correct copy of *Patent Compliance Group, Inc. v. Hunter Fan Co.*, No. 10-2442 MaV (W.D. Tenn. Dec. 21, 2010).

12.     In its First Set of Interrogatories to Microchip, Keranos included the following four products in its definition of "Accused Products":  PIC18; PIC24; dsPIC DSCs; PIC32.

13.     In its First Set of Interrogatories to Seiko Epson, Keranos included the following ten products in its definition of "Accused Products":  S1C33240; S1C8F360; S1C8F626; S1C17

Family 16-bit microcontrollers; S1C6P366; S1C6F416; S1C6P466; S1C6F567; S1C6F666; S1C6F632.

14.    In its First Set of Interrogatories to Freescale, Keranos included the following twelve products in its definition of "Accused Products":  68HC05 (CPU05), 68HC08 (CPU08), 68HC11 (CPU11), 68HC12 (CPU12), 68HC16 (CPU16), 683XX, MPC500, MPC 860, MPC 8240/8250, MPC8540/8555/8560, MMM908E624 &625; HC08.

15.    In its First Set of Interrogatories to Samsung, Keranos included the following four products in its definition of "Accused Products":  S3f8xx, S3F4xxxx, BTMZ5012XX; BTMZ7311XX.

16.    In its First Set of Interrogatories to Toshiba, Keranos included the following sixteen products in its definition of "Accused Products":  TMP92FD28FG/DFG; TMP91FW40FG; TMP91FW60FG/DFG; TMP86FH47; TMP86FS49; TMP92FD23AFG/ADFG; TMP86FM29; TMP86FM48; TMP91FY42; TMP92FD54; TMP94FD53; TMP89FS60; TMP91FW60; TLCS-870 family; TLCS-900 Family; TX19.

17.    In its First Set of Interrogatories to TSMC, Keranos included the following product in its definition of "Accused Products":  Flash Memory products made with the so-called EMBFLASH process and technology.

18.    At the time Keranos served its First Set of Interrogatories to SST, its operative Infringement Contentions (referenced in its Interrogatories) identified one product:  the 89F58 Microcontroller.

19.    In its response to Keranos's Interrogatory No. 1, Microchip identified 2,155 products.

20.    In its response to Keranos's Interrogatory No. 1, SST identified 19 products.

21.     In its response to Keranos's Interrogatory No. 1, TSMC identified 151 products.

22.     In its response to Keranos's Interrogatory No. 1, Seiko Epson identified 29 products.

23.     In its response to Keranos's Interrogatory No. 1, Freescale identified 125 products.

24.     In its response to Keranos's Interrogatory No. 1, Toshiba identified 30 products.

25.     In its response to Keranos's Interrogatory No. 1, Samsung identified 3 products.

26.     Attached as Exhibit J is a true and correct copy of Defendant Microchip's Responses and Objections to Keranos's Second Set of Interrogatories to Manufacturing Entities, served on February 13, 2013.  All of the Moving Defendants made the same objections.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Dated: February 13, 2013                    _/s/  Brian C. Banner_____
                                            Brian C. Banner

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **LEON STAMBLER**, | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 2:09-CV-310 (DF)** |
| | § | |
| **AMAZON.COM, INC., et al.,** | § | |
| **Defendants.** | § | |

**O R D E R**

Before the Court is Plaintiff's Motion to Compel Discovery from Defendants J.C.

Penney, Sears, and Staples. Dkt. No. 470. Also before the Court is the response of Defendants

J.C. Penney Company, Inc., J.C. Penney Corporation, Inc. (collectively, "JCPenney"), Staples,

Inc. ("Staples"), Sears Holdings Corporation, Sears Brands, L.L.C., and Sears Holdings

Management Corporation (collectively, "Sears") (all collectively referred to herein as

"Defendants"). Dkt. No. 481. Further before the Court is Plaintiff's reply. Dkt. No. 483. The

Court held a hearing on May 11, 2011. *See* 5/11/2011 Minute Entry, Dkt. No. 484. Having

considered the briefing and all relevant papers and pleadings, the Court finds that Plaintiff's

motion should be GRANTED IN PART and DENIED IN PART.

**I. DISCUSSION**

This is a patent infringement case in which Plaintiff asserts United States Patents No.

5,793,302 and 5,974,148, both entitled "Method for Securing Information Relevant to a

Transaction."

Plaintiff moves to compel JCPenney, Sears, and Staples to respond more fully to certain

interrogatories, to produce more documents and e-mail, to produce witnesses for deposition more

1

quickly, and to pay attorney's fees and costs for the failure of a JCPenney witness to appear for a noticed deposition.  Dkt. No. 470.

**A.  Depositions**

(1)  Rule 30(b)(6) Deposition

Plaintiff submits that he previously deposed Defendants under Rule 30(b)(6) but has served a new Rule 30(b)(6) deposition notice on March 18, 2011.  Dkt. No. 470 at 6.  Defendants purportedly committed to provide available dates for deposition no later than March 28, 2011, but failed to do so.  *Id.*  Plaintiff also submits that "Defendants have taken the position that [Plaintiff] is entitled to take only <u>one</u> 30(b)(6) deposition per Defendant group, regardless of whether [Plaintiff] segregates the topics into separate 30(b)(6) notices."  *Id.* at 8.  Plaintiff responds that although a party is normally limited to one deposition of a "person" without leave of court, "Rule 30(b)(6) depositions are different from depositions of individuals."  *Id.* (quoting *Quality Aero Tech., Inc. v. Telemetrie Elektronik, GmbH*, 212 F.R.D. 313, 319 (E.D.N.C. 2002)).  Plaintiff moves to compel Defendants to produce Rule 30(b)(6) witnesses.  *Id.* at 6.

Defendants respond that Plaintiff previously took Rule 30(b)(6) depositions of Defendants (and used only about 2 hours, 1.5 hours, and 5.5 hours as to each of Sears, JCPenney, and Staples, respectively).  Dkt. No. 481 at 2 & nn.1-2.  Defendants cite Rule 30(a)(2)(A)(ii) for the proposition that a witness cannot be deposed more than once without leave of court (unless the parties agree to the deposition).  *Id.* at 2.  Defendants submit they "cannot agree to an unlimited series of wide-ranging corporate depositions in addition to numerous individual depositions."  *Id.*  Defendants cite numerous out-of-circuit cases in support of their position that Rule 30(a)(2)(A)(ii) applies to corporations, not just individuals.  *Id.* at 2-4 & n.3 (citing, *e.g.*,

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001), and

*State Farm Mutual Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 234-35 (E.D. Pa.

2008)).  Defendants also cite, however, an Order of Judge Ward of this Court's district, which

denied a motion to quash a second Rule 30(b)(6) notice because "[t]here is no Rule or law from

this Circuit requiring a party to seek leave of court in order to take a second 30(b)(6) deposition

of a corporate entity, when the topics in the second deposition notice are different from the first."

*Frank's Casing Crew and Rental Tools, Inc., et al. v. Tesco Corp., et al.*, C.A. No. 2:07-cv-15

(E.D. Tex. Jan. 21, 2009).

Alternatively, Defendants argue that Plaintiff's second set of Rule 30(b)(6) notices are

"invalid" because "the topics are so vague and broad, and in many instances of questionable, if

any, relevance, that they impose an undue burden on Defendants in trying to identify and prepare

representatives for testimony."  *Id.* at 4.  Defendants argue, for example, that Topics 1 through 5

"would require a witness to be prepared to testify as to the location of every document produced

by Defendants and to explain how all the numerous documents were gathered and produced, as

well as identify the organizational structure of any group or division that maintained a copy --

electronic or otherwise -- of each such document."  *Id.* at 5.  Defendants submit that the

remaining topics either relate to non-accused websites (which was a subject of Plaintiff's Motion

to Compel Complete Discovery from Defendants Neiman Marcus, Sears and Staples (Dkt. No.

454)) or "would be more effectively addressed by ongoing document production or other written

discovery."  *Id.*  "Defendants are, however, willing to provide witnesses who will cover the

subject matter of the remaining topics . . . ."  *Id.*

In reply, Plaintiff submits that his Rule 30(b)(6) topics are not vague or overly broad, and

3

Plaintiff cites Rule 26(b)(1), which permits discovery on any relevant, non-privileged matter, including the existence and location of documents.  Dkt. No. 483 at 3.

At the hearing, each Defendant agreed to submit to a second Rule 30(b)(6) deposition, and the parties agreed to confer regarding the noticed topics.  Plaintiff's motion to compel is therefore DENIED WITHOUT PREJUDICE as to Rule 30(b)(6) depositions.

### (2)  Non-Appearance of JCPenney Witness Mark Warhol

In early February 2011, Plaintiff requested the deposition of Mark Warhol, a JCPenney employee. Dkt. No. 470 at 9.  *See also* Dkt. No. 483 at 2 n.1.  Regardless, Plaintiff received no proposed date and, on March 3, 2011, Plaintiff noticed the deposition for March 21, 2011.  Dkt. No. 470 at 9.  JCPenney responded that March 21, 2011, was not acceptable due to scheduling conflicts.  *Id.*  Plaintiff replied that he would not agree to a different date unless JCPenney offered a date prior to April 22, 2011.  *Id.*  JCPenney did not file any motion to quash or motion for protective order.  *Id.*  Plaintiff's counsel appeared for the deposition on March 21, 2011, but Mark Warhol did not appear.  *Id.*  Plaintiff requests reimbursement for costs and attorney's fees associated with the non-appearance.  *Id.*

Defendants respond the Court should reject Plaintiff's "audacious" request for reimbursement because "Plaintiff unilaterally noticed the deposition" and then appeared "despite having been told several times that J.C. Penney could not make Mr. Warhol available then, but would present him on a mutually agreeable date."  *Id.* at 7.  Defendants also note that Plaintiff ultimately deposed Mr. Warhol on April 5, 2011, two days before Plaintiff filed the present motion to compel.  *Id.*

Plaintiff replies that JCPenney refused Plaintiff's offers to reschedule and "simply

4

ignored [Plaintiff's] notice instead of filing a motion to quash it."  Dkt. No. 483 at 2 n.1.

At the hearing, Plaintiff agreed to withdraw his request for costs and attorney's fees for the non-appearance.  This portion of Plaintiff's motion is therefore DENIED AS MOOT.

### (3)  Promptness of Producing Witnesses for Deposition

Plaintiff submits that "[t]he time between when [Plaintiff] requests a deposition date and the time the deposition finally occurs is between 2 and 5 months."  Dkt. No. 470 at 7.  Plaintiff moves for "an order that requires Defendants to provide available deposition dates to [Plaintiff] within 10 days of [Plaintiff's] request and that the available dates provided be within 5 weeks of the date [Plaintiff] made the request."  *Id.*

Defendants respond they have been diligent and "Plaintiff has already deposed 14 individual employees of Defendants," in addition to Rule 30(b)(6) depositions.  Dkt. No. 481 at 6.  Defendants urge the Court to reject Plaintiff's request that the Court "micromanage" deposition scheduling.  *Id.* at 5.

Competent, diligent counsel and parties should both request depositions in a timely manner and make witnesses available with reasonable promptness.  During oral argument, the parties represented that they have resolved all but one of the outstanding deposition notices.  Plaintiff's request for a blanket order on deposition scheduling should be DENIED.  As stated by the Court at the hearing on this motion, if the parties cannot reach agreement, the Court will hold a scheduling conference by telephone to set dates for any outstanding deposition notices.

### B.  Interrogatories

Plaintiff moves to compel Defendants "to fully answer Plaintiff's Interrogatory Nos. 10, 11, 12, and 13 with all relevant, discoverable information."  Dkt. No. 470 at 1.  Defendants

respond that Plaintiff has "regurgitated interrogatories he had served in past cases involving online banking and online bill pay defendants," which "do not make sense when applied to retail websites." Dkt. No. 481 at 8. Plaintiff replies that despite Defendant's claims that they do not conduct funds transfers, "they cannot dispute that customers make payments for goods and merchandise using, on, or through jcpenney.com, sears.com, and staples.com." Dkt. No. 483 at 4 (emphasis omitted).

The interrogatories at issue request that Defendants: identify services provided to Defendants by third parties; describe Defendants' funds transfer processes; list the fees charged by or to Defendants; and identify Defendants' user interfaces and the dates of use thereof. The Court addresses these interrogatories in turn:

> INTERROGATORY NO. 10: For each website, product, or service identified in response to Interrogatory No. 1, identify each third party that provides products or services for processing, in whole or in part, payments and/or funds transfers made using, on, or through Defendant's website(s) (or other product or service); and describe in detail the product or service provided to or used by Defendant, the dates of use, and the type(s) of payment or funds transfer information given to the third party.

Dkt. No. 470, Ex. 1 at 8. Plaintiff argues that "Defendants each identify the third parties that provide products and services, but they do not provide the remainder of the requested information." Dkt. No. 470 at 10.

Defendants respond that they answered the "primary question" and are not obligated to answer the remainder of the interrogatory because it is "indisputable a subpart" and "Plaintiff has already exceeded his permitted number of interrogatories." *Id.* at 8. In other words, Defendants conclude that "[b]ecause Defendants have provided information [as] to more than one subpart already, their responses to Interrogatory 10 are complete." *Id.* at 9. Defendants cite various cases

6

for the proposition that where an interrogatory contains "discrete subparts," those subparts must be counted toward the total number of permitted interrogatories. *Id.*

Plaintiff replies that in correspondence, Defendants' counsel already agreed to answer all of the interrogatories at issue. Dkt. No. 483 at 4. Alternatively, Plaintiff argues that the purported "subparts" are "logically and factually subsumed within and necessarily related to the primary question posed in the interrogatory." *Id.* (citation and quotation marks omitted).

Defendants properly note that discrete subparts may be counted toward the total number of interrogatories. *See, e.g., Fisher v. Agios Nicolaos V*, 636 F.2d 1107, 1115 (5th Cir. 1981) ("Plaintiff has filed an original set of interrogatories with 59 principal questions and over 140 subquestions, a total of 1[9]9 interrogatories, which Defendant has answered. Plaintiff filed an additional second set of interrogatories, consisting of 24 questions with 6 subparts, a total of 30 interrogatories . . . ."). But if a serving party purportedly abuses interrogatories, the proper course is for the responding party to file a motion to strike or a motion for protective order. More importantly, Defendants cite no authority for the proposition that the responding party can craft its own remedy by deciding which interrogatories (or subparts) to answer and which to ignore. *See, e.g., Maness v. Meyers*, 419 U.S. 449, 458 (1975) (regarding failure to produce documents, warning against "private determinations of the law") (citations omitted).

Plaintiff's motion should therefore be GRANTED as to Interrogatory No. 10. Further, Defendants' position regarding their refusal to answer certain subparts does not appear to have been "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii). The Court therefore ORDERS Defendants to show cause why they should not "pay the [Plaintiff's] reasonable expenses incurred in making the motion [as to Interrogatory No. 10], including attorney's fees." Fed. R.

Civ. P. 37(a)(5)(A).

> INTERROGATORY NO. 11: For each recipient of a payment or funds transfer made through a website, product, or service identified in response to Interrogatory No. 1, describe the process of transferring payment or funds to the recipient, including in your response the information used to determine the account from which payments or funds transfers are made, and the account to which payments or funds are transferred, where and how such information is stored and accessed, and the method in which payments or funds are transferred (e.g. ACH, transfer to another account with Defendant, wire, etc.).

Dkt. No. 470, Ex. 1 at 8. Plaintiff argues that despite Plaintiff's e-mail responses to Defendants' requests for clarification of this interrogatory, "each Defendant has provided identical objections to this Interrogatory but no substantive response." Dkt. No. 470 at 11 (emphasis omitted).

Defendants respond that this interrogatory is too "cryptic" to answer but, "in the spirit of cooperation and acting in good faith, Defendants have now amended their responses to provide information regarding the account(s) to which third parties deposit settlement funds." Dkt. No. 481 at 10 (citing Exs. E-3 (JCPenney), E-4 (Staples), & E-5 (Sears)).

Plaintiff replies that "despite Defendant's claims to the contrary, their amended interrogatory responses do not cure the deficiencies of their prior responses" and "provide little more than cursory additional information." Dkt. No. 483 at 4.

Defendant's original responses to Interrogatory No. 11 gave no substantive response. *See* Dkt. No. 470 at Exs. 22 (JCPenney), 23 (Sears), & 24 (Staples). Plaintiff's counsel's March 29, 2011 e-mail clarifies what Plaintiff is seeking by Interrogatory No. 11. Defendants' amended responses are reasonably responsive to the interrogatory as clarified by the e-mail. *See* Dkt. No. 481 at Exs. E-3 (JCPenney), E-4 (Staples), & E-5 (Sears). Plaintiff's request for further amended responses to this interrogatory is therefore DENIED.

8

Clarification of this interrogatory was necessary for Defendants to be reasonably expected to respond, so Defendants' objections were "substantially justified," so the Court declines to award any expenses to Plaintiff. Fed. R. Civ. P. 37(a)(5)(A)(ii). Also, although Defendants served their amended responses after Plaintiff filed his motion to compel, that motion was filed only about one week after Plaintiff's clarification of the interrogatory. See 3/29/2011 e-mail, Dkt. No. 470 at Ex. 25; Dkt. No. 470 (motion filed April 7, 2011); 5/2/2011 Dkt. No. 481 at Exs. E-3, E-4, & E-5 (amended responses served May 2, 2011). These "other circumstances" would "make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(iii). Finally, although Plaintiff's request for further amended responses is denied, the Court declines to award any expenses to Defendants because Plaintiff's "motion was substantially justified" and was filed prior to Defendants serving their amended responses. Fed. R. Civ. P. 37(a)(5)(B).

> INTERROGATORY NO. 12: From 2003 to the present, identify all fees or charges, paid by, to, or on behalf of Defendant, for use of, enrollment in, or processing or receipt of payments or funds transfers on, through, or using any website, product, or service identified in response to Interrogatory No. 1, and state by quarter the gross revenue and/or cost for each type of fee or charge. Examples of fees or charges covered by this interrogatory include: (1) monthly fees or charges to users of Defendant's online payment or funds transfer services, (2) per transaction fees or charges to users of Defendant's online payment or funds transfer services, (3) fees or charges to recipients of payments or funds transfers made on, through, or using Defendant's online payment or funds transfer services, (4) monthly fees or charges paid to Defendant for payments or funds transfers made using, on, or through Defendant's website(s) (or other product or service), and (5) per transaction fees or charges paid to Defendant for payments or funds transfers made using, on, or through Defendant's website(s) (or other product or service).

Dkt. No. 470, Ex. 1 at 8. Plaintiff submits that Defendants respond they do not charge their "customers any fees for using or making purchases via the accused instrumentalities," but Plaintiff argues that the interrogatory is broader. Dkt. No. 470 at 11. Plaintiff argues that

9

Defendants fail to respond as to "other scenarios," such as: "(1) fees charged by payment processors to Defendants for payment processing (such as per transaction fees for authorizing and/or settling internet sales); (2) fees charged by Defendants to third parties for sales of the third parties' goods on Defendants' websites; and (3) any other fees charged by Defendants to customers, suppliers or merchants relating to online sales." *Id.*

Defendants respond that during meet and confer, "Plaintiff's counsel indicated he seeks any interchange fees paid to credit card issuers or processors -- but that information is neither asked for nor relevant." Dkt. No. 481 at 10.

Plaintiff's reading of his own interrogatory is a tortured one. Nonetheless, given that Plaintiff has clarified what he now seeks through this interrogatory, Defendants should respond appropriately in light of that clarification. Plaintiff's motion should therefore be GRANTED as to Interrogatory No. 12. Because of Plaintiff's contortion of his own interrogatory, the Court finds Defendants' objections and opposition were "substantially justified," so the Court declines to award any expenses. Fed. R. Civ. P. 37(a)(5)(A)(ii).

> INTERROGATORY NO. 13: For each website, product, or service identified in response to Interrogatory No. 1, identify by bates number documents that illustrate each unique user interface since October 1, 2003, whereby a customer inputs information required to initiate a funds transfer or online payment (including without limitation, log-on screens, screens for inputting account information, screens for selecting a product or service, screens for inputting a transfer amount, etc.) and set forth the dates that each user interface is/was in use.

Dkt. No. 470, Ex. 1 at 8. Plaintiff submits that Sears cites "illegible documents and does not include the dates of use for the user interfaces it purports to produce," "JCPenney fails to identify the dates of use for its user interfaces," and "Staples provides only objections to this Interrogatory and does not cite to any documents whatsoever." Dkt. No. 470 at 12.

10

Defendants respond that "[t]o the extent any documents reflecting user interfaces have been located, they have been produced and the Bates number listed." Dkt. No. 481 at 10. Defendants submit they "are not knowingly withholding any responsive documents; they simply have no reason to print or retain such screen shots in the ordinary course of business." *Id.*

Plaintiff's motion should be GRANTED IN PART and DENIED IN PART as to Interrogatory No. 13: Accepting Defendants' representations that all responsive documents have been produced and identified, Plaintiff's motion should be DENIED as to document identification. In addition, during oral argument, Defendants stated they have the relevant user interface source code and either have produced it already or will produce it by the end of May 2011. Defendants provide no explanation, however, for failure to identify dates of use. Even if such information is apparent from the source code itself (*see* Dkt. No. 481 at 10 n.14), Defendants are obligated to respond to the interrogatory either with the dates or with precise citations to where that information can be found in Defendants' production. *See* Fed. R. Civ. P. 33(d). Plaintiff's motion should therefore be GRANTED as to dates of use.

The Court ORDERS Defendants to show cause why they should not "pay the [Plaintiff's] reasonable expenses incurred in making the motion, including attorney's fees," as to dates of use. Fed. R. Civ. P. 37(a)(5)(A). The Court also ORDERS Plaintiff to show cause why he should not pay the Defendants' reasonable expenses, including attorney's fees, "incurred in opposing the motion" as to identification of user interface documents. Fed. R. Civ. P. 37(a)(5)(B).

## C. Documents

Plaintiff submits that "JCPenney and Staples have not produced at least the following documents":

11

- documents that describe how credit card payments initiated using the secure checkout features on Defendants' websites are processed and completed (see Exh. 2, RFP Nos. 79, 81, 82);

- agreements between Defendants and any acquirer or payment processor involved in processing credit card payments initiated on Defendants' websites (see Exh. 2, RFP Nos. 14, 17, 46, 83);

- organizational charts, including those for the IT, marketing, and payment processing departments (see Exh. 3, RFP Nos. 1-8); and

- communications between Defendants and third parties regarding payment processors used by Defendants and how payment processing works (see Exh. 2, RFP No. 9)

Dkt. No. 470 at 12. Plaintiff also submits that "Staples has not provided access to its source code." *Id.* at 13. Plaintiff submits that he served requests for most of these documents in April 2010 (the organizational charts were requested in August 2010) and that he re-urged his request for source code from Staples at least as early as January 2011. *Id.*

JCPenney and Staples respond that Plaintiff's document requests assume that they have a "funds transfer network," but JCPenney and Staples do not maintain any such network and "funds are not transferred through their websites." Dkt. No. 481 at 11; *see also id.* at 13. JCPenney and Staples also submit they are in the process of producing documents regarding processing of credit card payments, as well as agreements with credit card payment processors. *Id.* at 11-12. As to organizational charts, Defendants respond that they have "produced organizational charts with respect to relevant departments." *Id.* at 12. JCPenney submits that "[i]f Plaintiff continues to use J.C. Penney's organizational charts for the sole purpose of harassing J.C. Penney employees by noticing them for fruitless depositions, J.C. Penney will continue to assert its relevance objections to producing any remaining organization charts." *Id.*

Staples responds that "the staples.com team and related groups do not routinely create organizational charts as a matter of course," and "the organizational charts of the marketing departments Plaintiff seeks are completely irrelevant to the parties' claims and defenses." *Id.* Defendants collectively submit that although marketing materials mention their websites, "[t]his fact alone does not warrant revealing every marketing employee, especially since Plaintiff uses the organizational charts for the sole purpose of noticing depositions and thereby causing Defendants to incur more cost for futile discovery tactics." *Id.*

Plaintiff replies that "Defendants' strategy — making a drawn-out 'rolling production' of documents for tactical advantage — is disfavored in this district." Dkt. No. 483 at 5 (citing Ex. 38, *Whetstone Elecs., LLC v. Xerox Corp.*, No. 6:10-cv-278, Dkt. No. 156 (E.D. Tex. Apr. 7, 2011) (Love, J.)).

Plaintiff's motion should be GRANTED as to credit card payment processing and processor agreements and similar responsive documents and communications, which Defendants represent they are in the process of producing. Dkt. No. 481 at 11-12. Given that production of these documents requires permission from third parties, the Court finds Defendants' delay has been "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii).

As to organizational charts, Defendants have unilaterally imposed non-production as a "self-help" sanction for Plaintiff's purported abuse of depositions. If Defendants believe that Plaintiffs are noticing depositions for harassment purposes, Defendants' proper remedy is to file a motion to quash or a motion for protective order as to each particular witness or group of witnesses. *Cf. Maness*, 419 U.S. at 458 (regarding failure to produce documents, warning against "private determinations of the law"). Also, marketing-related organizational charts are not

"completely irrelevant," as Defendants contend.  Dkt. No. 481 at 12.  For example, marketing may be relevant to damages.  Also, upon review, Plaintiff's requests for organizational documents through Requests No. 1-8 of Plaintiff's Second Set of Requests for Production are reasonable in scope.  Dkt. No. 481 at 12; *see* Dkt. No. 470, Ex. 3 at 5-6.  Plaintiff's motion to compel should therefore be GRANTED as to organizational charts.  The Court also ORDERS Defendants to show cause why they should not "pay the [Plaintiff's] reasonable expenses incurred in making the motion [as to organizational charts], including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).

As to source code, Plaintiff requested source code in his First Set of Requests for Production, dated April 5, 2010:

> 73.  Source code for all online payment and funds transfer systems offered or used by Defendant for the years 2003 through the present.
>
> 74.  Source code for each Accused Instrumentality or system for providing each Accused Instrumentality for the years 2003 through the present.
> . . .
> 80.  Source code for any software used to interface Defendant's online payment or funds transfer systems with any funds transfer network used to transfer funds in response to Defendant's customers' request for an online payment or funds transfer.

Dkt. No. 470, Ex. 2 at 12-13.  Staples responded during oral argument that it offered to make its source code available to Plaintiff long ago, but Staples has not identified any evidence of when it purportedly did so, and the Court finds no citation to such evidence in Staples' briefing.  *See* Dkt. No. 481.  Regardless, by the end of January 2011, Plaintiff had re-urged his request for source code (*see* Dkt. No. 470 at Ex. 26), and only after the filing of Plaintiff's motion to compel has Staples agreed to produce its source code by the end of May 2011.  Plaintiff's motion to compel

14

source code from Staples should therefore be GRANTED, and the Court further ORDERS

Staples to show cause why it should not "pay the [Plaintiff's] reasonable expenses incurred in

making the motion, including attorney's fees," as to source code.  Fed. R. Civ. P. 37(a)(5)(A).

**D.  E-Mail**

Plaintiff submits that in January 2011, the parties agreed on search terms and custodians

for e-mail production, and at this point:

> JCPenney and Staples claim to have started searching the identified custodians'
> emails but have not yet produced those emails, nor will they provide [Plaintiff]
> with a date certain by which they will produce those emails.  Sears produced a
> subset of, but not all, emails on March 29, 2011.

Dkt. No. 470 at 14.

Defendants respond that the agreed-upon search strings have produced overly

burdensome results.  Dkt. No. 481 at 13-14.  For example, Defendants argue, searching for

e-mails containing the word "revenue" is unreasonable because "Defendants have provided the

actual revenue numbers for the accused sites; any email including those words will not provide

any substantive information Plaintiff does not already have."  *Id.* at 13.  Defendants submit that

running the agreed-upon search strings yielded 440,000 e-mails for Sears, 180,000 for JCPenney,

and about 200,000 for Staples.  *Id.* at 14.  Defendants submit that if reviewed at 30-50 documents

per hour at a rate of $55 per hour for contract attorneys, "review costs alone could be in excess of

$1 million."  *Id.*  Defendants argue that the extent of this discovery should be limited by the

balancing test of Rule 26(b)(2)(C)(iii).  *Id.* at 14-15.  "Sears has proposed modified search terms

which result in 133,000 emails," JCPenney intends to produce a subset of 15,000 documents, and

Staples intends to produce a number similar to JCPenney's.  *Id.* at 15.

Plaintiff replies that having agreed to the search terms in January 2011, Defendants should not now be heard—four months later and only about two months before the close of discovery—to complain that the search terms are too burdensome.  Dkt. No. 483 at 5.  As to the purported burden, Plaintiff argues that "'quick peek agreements' or 'claw back agreements' as contemplated by the Federal Rules may completely eliminate attorney review costs." *Id.* at 6.

During oral argument, Plaintiff submitted it has reached agreement with Sears as to what e-mail will be produced.  JCPenney and Staples submitted that Plaintiff's requested e-mail review and production will cost each of them about $250,000.  JCPenney and Staples argued that under Rule 26(b)(2)(C)(iii), the expected benefits of production and the amount in controversy do not justify spending half a million dollars on their e-mail production.  JCPenney, for its part, represents it will produce a subset of e-mails at a cost of about $40,000 (not including ongoing costs for storage by the discovery vendor).

Rule 26(b)(2)(C)(iii) directs the Court to balance whether "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  The parties have not apprised the Court of the amount in controversy as to these Defendants, and the Court has minimal information about the potential value of the e-mail.  Defendants also do not advise how they have arrived at their proposed subset of e-mails, so the Court is not in a good position to judge once and for all whether Defendants' proposals are appropriate.

The burden of justifying non-production or reduced production should properly fall on JCPenney and Staples because they previously agreed to the search terms that Plaintiff is now

16

seeking to enforce.  Evidently, the cost of producing e-mails in response to those search terms is more burdensome than JCPenney or Staples anticipated.  A wiser course for JCPenney and Staples would have been to move for protection.  Instead, JCPenney and Staples have unilaterally undertaken the balancing analysis of Rule 26(b)(2)(C)(iii) on their own.  *Cf. Maness*, 419 U.S. at 458 (regarding failure to produce documents, warning against "private determinations of the law").  Because JCPenney and Staples have provided only scant information about the potential value of the e-mail, their financial resources, and the amount in controversy, the Court finds JCPenney and Staples have failed to justify protection under Rule 26(b)(2)(C)(iii).

Instead, full production is appropriate, particularly given that the parties negotiated and agreed upon a list of search terms.  *See* 1/10/2011 e-mail from R. Griffin, Dkt. No. 470 at Ex. 27; Dkt. No. 470 at Exs. 28 (JCPenney custodians), 29 (Sears custodians), & 30 (Staples custodians); *see also* Dkt. No. 481 (Defendants' response brief, acknowledging that in "January 2011 . . . agreement was reached on the search terms to be applied against designated custodians' email accounts").  Plaintiff's motion is therefore GRANTED AS MODIFIED as to e-mail production by JCPenney and Staples in accordance with the following:

JCPenney and Staples shall produce e-mail in response to all of the search terms or search strings (and as to all of the custodians) agreed upon by the parties in January 2011.

The expected $500,000 cost of reviewing and producing all of the e-mails at issue, however, warrants some consideration.  JCPenney and Staples largely complain that the agreed-upon search terms are generating e-mail that is irrelevant, cumulative, or of exceedingly low relevance.  Although JCPenney and Staples request either limited production or monetary cost-shifting, costs can be saved by allowing JCPenney and Staples to produce the e-mail generated by

the agreed upon search terms without screening out irrelevant e-mail. *See Hudson v. AIH Receivable Mgmt. Servs.*, No. 10-2287-JAR-KGG, 2011 WL 1402224, at *2 (D. Kan. Apr. 13, 2011) ("Defendant may produce unedited, unreviewed, and unredacted data files of all data in its possession, together with the name of the software needed to read the storage data. Plaintiff may then purchase the software and conduct her own searches."). Plaintiff is not a competitor of JCPenney or Staples, and neither JCPenney nor Staples have expressed any concern about needless production of proprietary, confidential information. Moreover, the parties have an agreed Protective Order in the above-captioned case that restricts the handling of confidential information. *See* 4/2/2010 Protective Order, Dkt. No. 317 at ¶ 10. "If Defendant wishes to review the data to produce only responsive and unprivileged e-mails, Defendant will bear the cost of the search and the needed software." *Hudson*, 2011 WL 1402224, at *2.

Admittedly, the *Hudson* court noted that unreviewed production "may not be practical" because the data may contain privileged e-mails, but presumably Defendants can conduct reasonable keyword-based searches for privileged material without needing to review every single e-mail. *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 576 (N.D. Ill. 2004) ("The responding party may also employ cost-saving measures, such as performing a key word search for a privilege review rather than examining each document."); *but see Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 262 (D. Md. 2008) (finding that keyword-based privilege screen was not done with reasonable care). If any privileged material is produced despite reasonable efforts, the parties have a suitable "claw back" agreement in the agreed Protective Order entered in the above-captioned case. *See* 4/2/2010 Protective Order, Dkt. No. 317 at ¶ 8.

Ultimately, JCPenney and Staples are in the best position to decide whether to review

18

some or all of the e-mail at issue or to produce without review (subject to a reasonable keyword-based privilege screen), as discussed above. Plaintiff, in turn, then bears some of the risk that the agreed upon search terms are overbroad, thereby burdening Plaintiff with unwarranted search and review costs. If, in light of this ruling, the parties wish to confer and revise their agreed upon search terms to reduce the burden on all parties, presumably they are free to do so.

Based on JCPenney's and Staple's unilateral decision to produce a subset of e-mails rather than file an appropriate motion for protection, the Court will order JCPenney and Staples to show cause why they should not "pay the [Plaintiff's] reasonable expenses incurred in making the motion, including attorney's fees," as to e-mail production. Fed. R. Civ. P. 37(a)(5)(A).

As a final note, the Court rarely sees disputes regarding production of e-mail because generally, as in this case, the parties agree on search terms and custodians. This case is unusual—and therefore of limited precedential value—because the parties reached an agreement but then Defendants argued pursuant to Rule 26(b)(2)(C)(iii) that the resulting review and production would be overly burdensome. As discussed above, Defendants failed to carry their burden in that regard, and the Court has ordered production in response to all of the agreed upon search terms and custodians. To be clear, the Court has not nullified the agreement of the parties or otherwise allowed Defendants to renege. Had the parties agreed that Defendants would bear the burden of excluding irrelevant e-mails from their production, the Court would not have been inclined to excuse Defendants from that burden. The parties have not shown that the agreement reached in January 2011 contained any such provision. The foregoing procedure is intended to uphold the parties' agreement while also minimizing costs and providing all parties with incentives to conduct e-mail discovery efficiently.

## II.  CONCLUSION

Plaintiff's Motion to Compel Discovery from Defendants J.C. Penney, Sears, and Staples (Dkt. No. 470) is hereby **GRANTED IN PART** and **DENIED IN PART** as set forth above.

By separate Order, the Court will order Defendants to show cause why they should not "pay the [Plaintiff's] reasonable expenses incurred in making the motion, including attorney's fees," as to Interrogatory No. 10, dates of use of user interfaces, and production of organizational charts.  Fed. R. Civ. P. 37(a)(5)(A).

By separate Order, the Court will order JCPenney and Staples to show cause why they should not "pay the [Plaintiff's] reasonable expenses incurred in making the motion, including attorney's fees," as to e-mail production.  Fed. R. Civ. P. 37(a)(5)(A).

By separate Order, the Court will order Staples to show cause why it should not "pay the [Plaintiff's] reasonable expenses incurred in making the motion, including attorney's fees," as to source code.  Fed. R. Civ. P. 37(a)(5)(A).

By separate Order, the Court will order Plaintiff to show cause why he should not pay the Defendants' reasonable expenses, including attorney's fees, "incurred in opposing the motion" as to identification of user interface documents.  Fed. R. Civ. P. 37(a)(5)(B).

**IT IS SO ORDERED.**

**SIGNED this 23rd day of May, 2011.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| KERANOS, LLC, | |
| Plaintiff, | |
| *vs.* | Civil Action No. 2:10-cv-00207-DF-CMC |
| ANALOG DEVICES, INC. et al., | Jury Trial Demanded |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |

**KERANOS, LLC'S FIRST SET OF INTERROGATORIES (NOS. 1-7) TO
DEFENDANT MICROCHIP**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Keranos, LLC ("Keranos") requests that defendant Microchip Technology, Inc. ("Microchip") answer the following interrogatories fully, in writing and under oath within thirty (30) days after service of this request.

## <u>DEFINITIONS</u>

1.      "You," "Your," "Yourself," or "Defendant" refers to defendant Microchip Technology, Inc., and its/their officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors or other persons acting on its behalf.

2.      "Keranos" refers to Keranos, LLC, and its officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors.

3.      The " '719 Patent" means U.S. Patent No. 4,795,719, entitled "Self-aligned Split Gate EPROM Process."

4.      The " '629 Patent" means U.S. Patent No. 4,868,629, entitled "Self-aligned Split Gate EPROM."

5.      The " '009 Patent" means U.S. Patent No. 5,042,009, entitled "Method for Programming a Floating Gate Memory Device."

6.      The "Keranos Patents" or "Patents-in-Suit" shall mean the '719 Patent, '629 Patent, and '009 Patent.

7.      The term "Flash Memory" shall mean semiconductor storage cells that can be electrically erased and reprogramed.

8.      The term "Source" shall mean a doped semiconductor region spaced apart from the Drain by a channel.

9.      The term "Drain" shall mean a doped semiconductor region that during at least a programming operation of the Flash Memory is at a higher voltage potential than the Source.

10.     The term "Self-Aligned" shall mean the placement of a new feature on a semiconductor substrate where the previously existing feature on the substrate is used either as a mask or a marker for the location of the placement of the new feature.

11.     The term "SuperFlash Technology" shall mean Silicon Storage Technology, Inc.'s ("SST") technology directed to split-gate memory cells, promoted, licensed and sold by SST under the trade name "SuperFlash."

12.     The term "Accused Structure" shall mean any split-gate Flash Memory cells embedded in discrete form, wafer form, or incorporated within larger systems that include:  (1) a Source, (2) a floating gate with opposite edges, (3) a control gate that overlays a portion of the floating gate; (4) a Drain region that is Self-Aligned to one edge of the floating gate, and (5) the Source region spaced apart from the other floating gate edge.

13.    "Accused Product" shall mean any products that include split-gate Flash Memory cells embedded in discrete form, wafer form or incorporated into larger memory devices, systems or end products made, used, imported, offered for sale, or sold within the United States by You, on Your behalf, or by Your licensee(s) during the Relevant Time Period (as defined below) including:

a.    All products that include or incorporate the Accused Structure.

b.    All products that include: (1) a Source, (2) a floating gate with opposite edges, (3) a control gate that overlays a portion of the floating gate, (4) a floating gate that that extends over a portion of the channel separating the Source and Drain and (5) are programmable by applying a voltage to the Drain and control gate to cause hot electron injection.

c.    All products that are licensed to use or incorporate SST's SuperFlash Technology.

d.    All products that embody or include the claimed subject matter of any of the Patents-in-Suit, either in structure or method of manufacturing, and all prototypes, derivatives, equivalents, and variations of such product.

e.    At least the following products:  the PIC18; PIC24; dsPIC DSCs; PIC32 and related family of products.

14.    "Incorporating Products" means products that incorporate Accused Products into a Product (as defined below).

15.    "Relevant Time Period" for each patent shall mean the time period for recoverable damages under 35 U.S.C. § 286 and 35 U.S.C. § 154(2).

16.     "Product" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, assemblage of components/parts (either individually or collectively), process, or method which is designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, imported, or under development.

17.     The term "Asserted Claims" or "Asserted Claim" means each claim that a party has identified in its Infringement Contentions or that a party subsequently asserts against any of the parties in this action.

18.     "Person(s)" means any natural person, company, corporation, partnership, firm, association, or other entity cognizable at law, and its agents, employees, and representatives.

19.     "Communication(s)" means any exchange or transfer of information between two or more persons or entities, whether written, oral, or in any other form including electronic forms such as e-mail.

20.     "Identify," as used with respect to any person, means to provide the following information: the person's full name, company or employer, title or occupation, address, telephone number, and e-mail address.

21.     The singular includes the plural, and the plural includes the singular. "Any" or "each" shall be understood to include and encompass "all."

22.     The words "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of this request all documents or things that might otherwise be construed to be outside its scope.

23.     The terms "infringe" and "infringement" refer to direct infringement, contributory infringement, inducement to infringe, literal infringement, and/or infringement by the doctrine of equivalents.

24.     The terms "relating," "related to," or "related" mean, in whole or in part, addressing, analyzing, concerning, containing, commenting on, discussing, describing, identifying, reflecting, report on, stating, dealings with, or in any manner pertaining to.

25.     The term "prior art" encompasses anything considered anticipatory and/or that makes any of the claims of the Patents-in-Suit obvious alone or in combination with other matter as adjudged by 35 U.S.C. §§ 102, 103, and all judicial interpretation of these statutes.

26.     The term "date" means the exact day, month and year, if ascertainable, or if not Your best approximation thereof.

27.     "Document(s)" has the broadest meaning permitted under Rules 26 and 33 of the Federal Rules of Civil Procedure, Rule 1001 of the Federal Rules of Evidence, and relevant case law.

## <u>INSTRUCTIONS</u>

1.     Your responses must include all information concerning the matters inquired about available to You or Your agents.

2.     If You cannot answer any interrogatory fully and completely after exercising due diligence to make inquiry and secure the information necessary to do so, please so state and answer each such interrogatory to the fullest extent You deem possible, specify the portion of each interrogatory that You claim to be unable to answer fully and completely, state the facts upon which You rely to support Your contention that You are unable to answer the interrogatory

fully and completely, and state what knowledge, information or belief You have concerning the unanswered portion of each such interrogatory.

3.    These interrogatories shall be continuous in nature.  If You subsequently obtain information that renders Your answers to these interrogatories incomplete or inaccurate, You are to amend Your answers to make them complete and accurate.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each Accused Product, by part, model, product name and number and, if the Accused Product is a larger memory device, system or end product containing Flash Memory, identify the Flash Memory contained therein, by manufacturer, vendor, model, product name and/or number.

**INTERROGATORY NO. 2:**

Identify the foundry and/or manufacturer(s), including their locations, of the Flash Memory constituting or included in each of Your Accused Products identified in Your response to Interrogatory No. 1.

**INTERROGATORY NO. 3:**

If the Split-Gate Flash Memory constituting or included in each of Your Accused Products are covered by any license, including but not limited to a license to SST's SuperFlash Technology or to the Patents-in-Suit, identify the license by date, names of the parties, and terms.

**INTERROGATORY NO. 4:**

Identify all retailers, online retailers, wholesalers, and/or distributors that sold and/or offered for sale the Accused Products identified in Your response to Interrogatory No. 1, including their names, addresses, and telephone numbers.

**INTERROGATORY NO. 5:**

For all Accused Products, identify on a quarterly basis the unit sales, sales, revenue, costs, and profits during the Relevant Time Period.

**INTERROGATORY NO. 6:**

If You contend that the Patents-in-Suit were unenforceable due to laches, identify the full basis for Your contention, including all facts and documents in support of your contention and persons with knowledge of that information.

**INTERROGATORY NO. 7:**

If You contend that You do not infringe any of the asserted claims of the Patents-in-Suit, state the full basis for Your contention, including all facts and documents in support of your contention and persons with knowledge thereof.

Dated:  January 31, 2012                    Respectfully submitted,


By:      /s/ *John W. Downing*
         John W. Downing

         Andrew W. Spangler
         State Bar No. 24941960
         spangler@spanglerlawpc.com
         SPANGLER LAW PC
         208 N. Green St., Suite 300
         Longview, TX  75601
         Bus:  (903) 753-9300
         Fax:  (903) 553-0403

James C. Otteson
CA Bar No. 157781 (Admitted E.D. Texas)
LEAD COUNSEL
jim@agilityiplaw.com
AGILITY IP LAW, LLP
149 Commonwealth Drive, Suite 103
Menlo Park, CA 94025
Bus:  650-227-4800
Fax:  650-318-3483

Michelle G. Breit
AZ Bar No. 021439 (Admitted E.D. Texas)
michelle@agilityiplaw.com
John W. Downing
AZ Bar No. 027463 (Admitted E.D. Texas)
jdowning@agilityiplaw.com
OTTESON LAW GROUP
AGILITY IP LAW, LLP
14350 North 87th Street, Suite 190
Scottsdale, AZ  85260
Bus:  480-646-3434
Fax:  480-646-3438

Attorneys for Plaintiff and Counterclaim Defendant
KERANOS, LLC

# Exhibit C

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG SEMICONDUCTOR INC., | |
| Plaintiffs, | |
| *vs.* | Civil Action No. 2:11-cv-00331-MHS |
| UNITED MODULE CORP. and KERANOS, LLC, | Jury Trial Demanded |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |
| MICROCHIP TECHNOLOGY, INC. and SILICON STORAGE TECHNOLOGY, INC., | |
| Plaintiffs, | Civil Action No. 2:11-cv-00332-MHS |
| *vs.* | *[Consolidated with No. 2:11-cv-00331-MHS]* |
| UNITED MODULE CORP.; KERANOS, LLC; et al., | Jury Trial Demanded |
| Defendants. | |
| TAIWAN SEMICONDUCTOR MANUFACTURING CO., LTD., TSMC NORTH AMERICA, and UBICOM, INC., | |
| Plaintiffs, | |
| *vs.* | Civil Action No. 2:11-cv-00333-MHS *[Consolidated with No. 2:11-cv-00331-MHS]* |
| UNITED MODULE CORP. and KERANOS, LLC, | Jury Trial Demanded |
| Defendants. | |
| AND RELATED COUNTERCLAIMS. | |

|  |  |
|---|---|
| FREESCALE SEMICONDUCTOR, INC., NATIONAL SEMICONDUCTOR CORP. and ANALOG DEVICES, INC.,<br><br>                    Plaintiffs,<br><br>        *vs.*<br><br>UNITED MODULE CORP. and KERANOS, LLC,<br><br>                    Defendants.<br><br>AND RELATED COUNTERCLAIMS | Civil Action No. 2:11-cv-00334-MHS<br>*[Consolidated with No. 2:11-cv-00331-MHS]*<br><br>Jury Trial Demanded |

## DEFENDANT KERANOS, LLC'S FIRST SET OF INTERROGATORIES (NOS. 1-9) TO PLAINTIFF SILICON STORAGE TECHNOLOGY, INC.

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant Keranos, LLC ("Keranos") requests that plaintiff Silicon Storage Technology, Inc. ("SST") answer the following interrogatories fully, in writing and under oath within thirty (30) days after service of this request.

### DEFINITIONS

1.      "You," "Your," "Yourself," or "Plaintiff" refers to defendant Silicon Storage Technology, Inc., and its/their officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors or other persons acting on its behalf.

2.      "Keranos" refers to Keranos, LLC, and its officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors.

3.      The "'719 Patent" means U.S. Patent No. 4,795,719, entitled "Self-aligned Split Gate EPROM Process."

4.      The "'629 Patent" means U.S. Patent No. 4,868,629, entitled "Self-aligned Split Gate EPROM."

5.    The "'009 Patent" means U.S. Patent No. 5,042,009, entitled "Method for Programming a Floating Gate Memory Device."

6.    The "Keranos Patents" or "Patents-in-Suit" shall mean the '719 Patent, '629 Patent, and '009 Patent.

7.    The term "Flash Memory" shall mean semiconductor storage cells that can be electrically erased and reprogramed.

8.    The term "Source" shall mean a doped semiconductor region spaced apart from the Drain by a channel.

9.    The term "Drain" shall mean a doped semiconductor region that during at least a programming operation of the Flash Memory is at a higher voltage potential than the Source.

10.    The term "Self-Aligned" shall mean the placement of a new feature on a semiconductor substrate where the previously existing feature on the substrate is used either as a mask or a marker for the location of the placement of the new feature.

11.    The term "SuperFlash Technology" shall mean Silicon Storage Technology, Inc.'s ("SST") technology directed to split-gate memory cells, promoted, licensed and sold by SST under the trade name "SuperFlash."

12.    The term "Accused Structure" shall mean any split-gate Flash Memory cells embedded in discrete form, wafer form, or incorporated within larger systems that include: (1) a Source, (2) a floating gate with opposite edges, (3) a control gate that overlays a portion of the floating gate; (4) a Drain region that is Self-Aligned to one edge of the floating gate, and (5) the Source region spaced apart from the other floating gate edge.

13.    "Accused Product" shall mean any products that include split-gate Flash Memory cells embedded in discrete form, wafer form or incorporated into larger memory devices,

systems or end products made, used, imported, offered for sale, or sold within the United States by You, on Your behalf, or by Your licensee(s) during the Relevant Time Period (as defined below) including:

      a.     All products that include or incorporate the Accused Structure.

      b.     All products that include: (1) a Source, (2) a floating gate with opposite edges, (3) a control gate that overlays a portion of the floating gate, (4) a floating gate that that extends over a portion of the channel separating the Source and Drain and (5) are programmable by applying a voltage to the Drain and control gate to cause hot electron injection.

      c.     All products that are licensed to use or incorporate SST's SuperFlash Technology.

      d.     All products that embody or include the claimed subject matter of any of the Patents-in-Suit, either in structure or method of manufacturing, and all prototypes, derivatives, equivalents, and variations of such product.

14.   "Incorporating Products" means products that incorporate Accused Products into a Product (as defined below).

15.   "Relevant Time Period" for each patent shall mean the time period for recoverable damages under 35 U.S.C. § 286 and 35 U.S.C. § 154(2).

16.   "Product" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, assemblage of components/parts (either individually or collectively), process, or method which is designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, imported, or under development.

17.    The term "Asserted Claims" or "Asserted Claim" means each claim that Keranos has identified in its Infringement Contentions or that Keranos subsequently asserts against any of the parties in this action.

18.    "Person(s)" means any natural person, company, corporation, partnership, firm, association, or other entity cognizable at law, and its agents, employees, and representatives.

19.    "Communication(s)" means any exchange or transfer of information between two or more persons or entities, whether written, oral, or in any other form including electronic forms such as e-mail.

20.    "Identify," as used with respect to any person, means to provide the following information: the person's full name, company or employer, title or occupation, address, telephone number, and e-mail address.

21.    The singular includes the plural, and the plural includes the singular. "Any" or "each" shall be understood to include and encompass "all."

22.    The words "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of this request all documents or things that might otherwise be construed to be outside its scope.

23.    The terms "infringe" and "infringement" refer to direct infringement, contributory infringement, inducement to infringe, literal infringement, and/or infringement by the doctrine of equivalents.

24.    The terms "relating," "related to," or "related" mean, in whole or in part, addressing, analyzing, concerning, containing, commenting on, discussing, describing, identifying, reflecting, report on, stating, dealings with, or in any manner pertaining to.

25.    The term "prior art" encompasses anything considered anticipatory and/or that makes any of the claims of the Patents-in-Suit obvious alone or in combination with other matter as adjudged by 35 U.S.C. §§ 102, 103, and all judicial interpretation of these statutes.

26.    The term "date" means the exact day, month and year, if ascertainable, or if not Your best approximation thereof.

27.    "Document(s)" has the broadest meaning permitted under Rules 26 and 33 of the Federal Rules of Civil Procedure, Rule 1001 of the Federal Rules of Evidence, and relevant case law.

28.    "207 Case" means the litigation pending in the United States District Court, Eastern District of Texas, captioned *Keranos, LLC v. Analog Devices, Inc., et al.*, Civil Action No. 2:10-cv-00207.

29.    "Consolidated DJ Action" means the above captioned consolidated cases.

## <u>INSTRUCTIONS</u>

1.    Your responses must include all information concerning the matters inquired about available to You or Your agents.

2.    If You cannot answer any interrogatory fully and completely after exercising due diligence to make inquiry and secure the information necessary to do so, please so state and answer each such interrogatory to the fullest extent You deem possible, specify the portion of each interrogatory that You claim to be unable to answer fully and completely, state the facts upon which You rely to support Your contention that You are unable to answer the interrogatory fully and completely, and state what knowledge, information or belief You have concerning the unanswered portion of each such interrogatory.

3.      These interrogatories shall be continuous in nature.  If You subsequently obtain information that renders Your answers to these interrogatories incomplete or inaccurate, You are to amend Your answers to make them complete and accurate.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

For each Accused Product made by You, identify the Accused Product by (internal and public) part, model, or product name and/or number, and location where the part was made.

**INTERROGATORY NO. 2:**

For each Accused Product made for You or on Your behalf by a third-party, identify the Accused Product by (internal and public) part, model, product name and/or number, and the name and location of the manufacturer or foundry that made the Accused Product.

**INTERROGATORY NO. 3:**

For each Accused Product made by any licensee of SST's SuperFlash Technology, identify the name of the licensee that made the Accused Product, the part, model, product name and/or number, and the name and location of the manufacturer or foundry that made the Accused Product.

**INTERROGATORY NO. 4:**

For each license which You have entered into relating to SuperFlash technology, which were in effect during any part of the Relevant Time Period, identify the names of the parties to the license, the start date and termination, and the terms of the license.

**INTERROGATORY NO. 5:**

Identify all retailers, online retailers, wholesalers, and/or distributors that sold and/or offered for sale in the United States Accused Products identified in Your response to

Interrogatories Nos. 1-3, including their names, addresses, and telephone numbers, contact person, and products sold or offered for sale.

**INTERROGATORY NO. 6:**

For each Accused Products identified in Interrogatories Nos. 1-3, identify on a quarterly basis during the Relevant Time Period the unit sales by product name, customer name and customer location, unit price, revenue received by You (including where applicable royalty revenue), costs, and profits.

**INTERROGATORY NO. 7:**

For each Accused Product identified in Interrogatories Nos. 1-3, which were manufactured outside the United States and imported into the United States identify all instances of importation into the United States (whether the Accused Product consists of the Flash Memory itself or whether the Flash Memory is part of a larger memory device, system or end product) by part, model, or product name and/or number, location where the part was made, and the Person(s) responsible for the importation of each Accused Product.

**INTERROGATORY NO. 8:**

If You contend that the Patents-in-Suit are unenforceable due to laches, identify the full basis for Your contention, including all facts and documents in support of Your contention and persons with knowledge of that information.

**INTERROGATORY NO. 9:**

If You contend that You do not infringe any of the asserted claims of the Patents-in-Suit, state the full basis for Your contention on a claim by claim, element by element basis, including all facts and documents in support of Your contention and persons with knowledge thereof.

Dated:  April 11, 2012                Respectfully submitted,


                          By:     _/s/ *John W. Downing*_____
                                  John W. Downing

                                  Andrew W. Spangler
                                  State Bar No. 24941960
                                  spangler@sfipfirm.com
                                  SPANGLER & FUSSELL P.C.
                                  208 N. Green St., Suite 300
                                  Longview, TX  75601
                                  Bus:  (903) 753-9300
                                  Fax:  (903) 553-0403

                                  James C. Otteson
                                  CA Bar No. 157781 (Admitted E.D. Texas)
                                  LEAD COUNSEL
                                  jim@agilityiplaw.com
                                  AGILITY IP LAW, LLP
                                  149 Commonwealth Drive, Suite 103
                                  Menlo Park, CA 94025
                                  Bus:  650-227-4800
                                  Fax:  650-318-3483

                                  Michelle G. Breit
                                  AZ Bar No. 021439 (Admitted E.D. Texas)
                                  michelle@agilityiplaw.com
                                  John W. Downing
                                  AZ Bar No. 027463 (Admitted E.D. Texas)
                                  jdowning@agilityiplaw.com
                                  OTTESON LAW GROUP
                                  AGILITY IP LAW, LLP
                                  14350 North 87th Street, Suite 190
                                  Scottsdale, AZ  85260
                                  Bus:  480-646-3434
                                  Fax:  480-646-3438

                                  Attorneys for Defendant and Counterclaim Plaintiff
                                  KERANOS, LLC

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| KERANOS, LLC,<br>　　　　　Plaintiff,<br>　　*vs.*<br>ANALOG DEVICES, INC. et al.,<br>　　　　　Defendants. | Civil Action No. 2:10-cv-00207-MHS<br>Civil Action No. 2:11-cv-00331-MHS<br>Civil Action No. 2:11-cv-00332-MHS<br>Civil Action No. 2:11-cv-00333-MHS<br>Civil Action No. 2:11-cv-00334-MHS |
| SAMSUNG ELECTRONICS CO., LTD. and<br>SAMSUNG SEMICONDUCTOR INC.,<br>　　　　　Plaintiffs,<br>　　*vs.*<br>UNITED MODULE CORP. and KERANOS, LLC,<br>　　　　　Defendants.<br>AND RELATED COUNTERCLAIMS. | [MANUFACTURING ENTITIES<br>CASE as ordered by the Court in the<br>hearing on December 12, 2012]<br><br>Jury Trial Demanded |
| MICROCHIP TECHNOLOGY, INC. and SILICON<br>STORAGE TECHNOLOGY, INC.,<br>　　　　　Plaintiffs,<br>　　*vs.*<br>UNITED MODULE CORP.; KERANOS, LLC; et al.,<br>　　　　　Defendants. | |
| TAIWAN SEMICONDUCTOR MANUFACTURING<br>CO., LTD., TSMC NORTH AMERICA, and UBICOM,<br>INC.,<br>　　　　　Plaintiffs,<br>　　*vs.*<br>UNITED MODULE CORP. and KERANOS, LLC,<br>　　　　　Defendants.<br>AND RELATED COUNTERCLAIMS. | |
| FREESCALE SEMICONDUCTOR, INC.,<br>NATIONAL SEMICONDUCTOR CORP. and<br>ANALOG DEVICES, INC.,<br>　　　　　Plaintiffs,<br>　　*vs.*<br>UNITED MODULE CORP. and KERANOS, LLC,<br>　　　　　Defendants.<br>AND RELATED COUNTERCLAIMS | |

**KERANOS, LLC'S SECOND SET OF INTERROGATORIES (NOS. 8-19; SST NOS. 10-21) TO MANUFACTURING ENTITIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Keranos, LLC ("Keranos") requests that the manufacturing entities Silicon Storage Technology, Inc. ("SST"), Seiko Epson Corporation and Epson America, Inc. (collectively "Epson"), Freescale Semiconductor, Inc. ("Freescale"), Microchip Technology, Inc. ("Microchip"), Samsung Semiconductor, Inc. and Samsung Electronics Co., Ltd. (collectively "Samsung"), Taiwan Semiconductor Manufacturing Company, Ltd. and TSMC North America (collectively "TSMC"), Toshiba Corporation and Toshiba America Electronic Components, Inc. (collectively "Toshiba") (all collectively "Manufacturing Entities") respond to the following interrogatories fully, in writing and under oath within thirty (30) days after service of this request.

## **DEFINITIONS**

1.      As served on SST, the terms "You," "Your," "Yourself" refers to Silicon Storage Technology, Inc. and its officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors or other persons acting on its behalf.

2.      As served on Epson, the terms "You," "Your," and "Yourself" refers to Seiko Epson Corporation and Epson America, Inc., and their officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors or other persons acting on its behalf.

3.      As served on Freescale, the terms "You," "Your," and "Yourself" refers to Freescale Semiconductor, Inc. and its officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors or other persons acting on its behalf.

4.      As served on Microchip, the terms "You," "Your," and "Yourself" refers to Microchip Technology, Inc. and its officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors or other persons acting on its behalf.

5.      As served on Samsung, the terms "You," "Your," and "Yourself" refers to Samsung Semiconductor, Inc. and Samsung Electronics Co., Ltd. and their officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors or other persons acting on its behalf.

6.      As served on TSMC, the terms "You," "Your," and "Yourself" refers to Taiwan Semiconductor Manufacturing Company, Ltd. and TSMC North America and their officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors or other persons acting on its behalf.

7.      As served on Toshiba, the terms "You," "Your," and "Yourself" refers to Toshiba Corporation and Toshiba America Electronic Components, Inc. and their officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors or other persons acting on its behalf.

8.      "Keranos" refers to Keranos, LLC, and its officers, directors, agents, employees, representatives, divisions, subsidiaries, predecessors, and successors.

9.      The "'719 Patent" means U.S. Patent No. 4,795,719, entitled "Self-aligned Split Gate EPROM Process."

10.      The "'629 Patent" means U.S. Patent No. 4,868,629, entitled "Self-aligned Split Gate EPROM."

11.      The "'009 Patent" means U.S. Patent No. 5,042,009, entitled "Method for Programming a Floating Gate Memory Device."

12.      The "Keranos Patents" or "Patents-in-Suit" shall mean the '719 Patent, '629 Patent, and '009 Patent.

13.      The term "SuperFlash Technology" or "SuperFlash" shall mean technology directed to split-gate memory cells, which was provided, promoted, licensed or sold by SST and others under

the trade name "SuperFlash." The definition includes technology licensed to, based on, or derived from SuperFlash technology, whether referred to or sold under the "SuperFlash" name or any other name.

14.    The term "SuperFlash License" shall mean the license agreement covering SST's "SuperFlash" patents and Technology portfolio including the licenses identified in Defendants responses to Interrogatory No. 3.

15.    "Accused Product" shall mean any products identified by Defendants response and supplemental responses to Keranos' Interrogatory No. 1, SuperFlash memory devices, both standalone and embedded, and larger products that incorporate such memory.

16.    "Relevant Time Period" for each patent shall mean the time period for recoverable damages under 35 U.S.C. § 286 and 35 U.S.C. § 154(2).

17.    "Product" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, assemblage of components/parts (either individually or collectively), process, or method which is designed to function together electrically, mechanically, chemically, or otherwise, to achieve a particular function or purpose, including those offered for sale, sold, imported, or under development.

18.    The term "Asserted Claims" or "Asserted Claim" means each claim that Keranos has identified in its Infringement Contentions or that Keranos subsequently asserts against any of the parties in this action.

19.    "Person(s)" means any natural person, company, corporation, partnership, firm, association, or other entity cognizable at law, and its agents, employees, and representatives.

20.    "Communication(s)" means any exchange or transfer of information between two or more persons or entities, whether written, oral, or in any other form including electronic forms such as e-mail.

21.     "Identify," as used with respect to any person, means to provide the following information: the person's full name, company or employer, title or occupation, address, telephone number, and e-mail address.

22.     The singular includes the plural, and the plural includes the singular. "Any" or "each" shall be understood to include and encompass "all."

23.     The words "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of this request all documents or things that might otherwise be construed to be outside its scope.

24.     The terms "infringe" and "infringement" refer to direct infringement, contributory infringement, inducement to infringe, literal infringement, and/or infringement by the doctrine of equivalents.

25.     The terms "relating," "related to," or "related" mean, in whole or in part, addressing, analyzing, concerning, containing, commenting on, discussing, describing, identifying, reflecting, report on, stating, dealings with, or in any manner pertaining to.

26.     The term "date" means the exact day, month and year, if ascertainable, or if not Your best approximation thereof.

27.     "Document(s)" has the broadest meaning permitted under Rules 26 and 33 of the Federal Rules of Civil Procedure, Rule 1001 of the Federal Rules of Evidence, and relevant case law.

## **INSTRUCTIONS**

1.     Your responses must include all information concerning the matters inquired about available to You or Your agents.

2.     If You cannot answer any interrogatory fully and completely after exercising due diligence to make inquiry and secure the information necessary to do so, please so state and answer each such interrogatory to the fullest extent You deem possible, specify the portion of each

interrogatory that You claim to be unable to answer fully and completely, state the facts upon which You rely to support Your contention that You are unable to answer the interrogatory fully and completely, and state what knowledge, information or belief You have concerning the unanswered portion of each such interrogatory.

3.    These interrogatories shall be continuous in nature.  If You subsequently obtain information that renders Your answers to these interrogatories incomplete or inaccurate, You are to amend Your answers to make them complete and accurate.

## INTERROGATORIES

### INTERROGATORY NO. 8 (SST NO. 10)[1]:

For all "SuperFlash" memory devices manufactured by You or on Your behalf (including but not limited to the Accused Products), during the years 2004-2008, inside or outside of the United States, describe in detail the process by which the memory cells were manufactured, including all processing steps, the location of the manufacturing, all entities involved in the manufacturing and identify all documents that support Your response.

### INTERROGATORY NO. 9 (SST NO. 11):

For all "SuperFlash" memory devices manufactured, sold, or tested by You or on Your behalf (including but not limited to the Accused Products), during the years 2004-2008, inside or outside of the United States, describe in detail how the memory cells are programmed and identify all documents that support Your response.  (A complete response will include, at least, whether or not the memory devices are programmed by hot electron injection or some other programing

---

[1] The interrogatories are listed to reflect the fact that two additional interrogatories were propounded on SST prior to the December consolidation.

KERANOS, LLC'S SECOND SET OF INTERROGATORIES (NOS. 8-19; SST NOS. 10-21) TO MANUFACTURING ENTITIES

method, a description of that programming method, the voltages and currents that are used to program the individual memory cells, how the programming power is supplied (i.e. through a charge pump), and the number of cells programmed in parallel).

**INTERROGATORY NO. 10 (SST NO. 12):**

If You manufactured SuperFlash memory or had a third-party manufacture SuperFlash memory on Your behalf during the years 2004-2008, inside or outside of the United States, provide the dates and locations of the product manufacturing by the specific model number (including the internal product name, product generation, alias, market name etc.) and manufacturer, and identify all documents that support Your response.

**INTERROGATORY NO. 11 (SST NO. 13):**

Describe in detail all testing performed on the SuperFlash memory in each Accused Product, including how, where and by whom the testing was performed, and identify all documents that support Your response.

**INTERROGATORY NO. 12 (SST NO. 14):**

Identify any and all individuals and/or entities who sold Your Accused Products in the United States or imported them into the United States, including the names, addresses, and phone numbers, as well as the identification of the Accused Product (including the internal product name, alias, market name etc.) and identify all documents that support Your response.

**INTERROGATORY NO. 13 (SST NO. 15):**

Identify all Accused Products sold or imported in or into the United States by You or on Your behalf, including, for each sale, the date, location, buyer, and product name, and/or SuperFlash part (as well as the internal product name, product generation, alias, market name etc.) and identify all documents that support Your response.

**INTERROGATORY NO. 14 (SST NO. 16):**

Identify the three (3) persons most knowledgeable regarding the design, function, and testing of the Accused Product, including their position and employer.

**INTERROGATORY NO. 15 (SST NO. 17):**

Identify the three (3) persons most knowledgeable regarding the manufacture and production of each of Your Accused Products, including their position and employer.

**INTERROGATORY NO. 16 (SST NO. 18):**

Identify the three (3) persons most knowledgeable regarding the sales and marketing of each of Your Accused Products in the United States, including their position and employer.

**INTERROGATORY NO. 17 (SST NO. 19):**

Separately for each patent-in-suit, describe in detail the circumstances in which You first became aware of each of the Asserted Patents, including the date You learned of each of their existence and the identification of all documents that support Your response.

**INTERROGATORY NO. 18 (SST NO. 20):**

Describe in detail any design changes that You have undertaken or considered for purpose of avoiding infringement of the Asserted Patents.

**INTERROGATORY NO. 19 (SST NO. 21):**

Describe in detail how royalties were paid/calculated under the SuperFlash License from 2004-2008 for the United States market, including the identification of all products (including internal product names/alias) that fell within the scope of the license, how the products were identified to SST, and identify by Bates number all royalty reports.

Dated: January 10, 2013          By:      _/s/ John W. Downing_____
                                                     John W. Downing

Andrew W. Spangler
State Bar No. 24941960
spangler@sfipfirm.com
James "Tripp" Fussell
AR Bar No. 2003193 (Admitted E.D. Texas)
fussell@sfipfirm.com
SPANGLER & FUSSELL, P.C.
208 N. Green St., Suite 300
Longview, TX  75601
Bus:  (903) 753-9300
Fax:  (903) 553-0403

James C. Otteson
CA Bar No. 157781 (Admitted E.D. Texas)
LEAD COUNSEL
jim@agilityiplaw.com
AGILITY IP LAW, LLP
149 Commonwealth Drive, Suite 103
Menlo Park, CA 94025
Bus:  650-227-4800
Fax:  650-318-3483

Michelle G. Breit
AZ Bar No. 021439 (Admitted E.D. Texas)
michelle@agilityiplaw.com
John W. Downing
AZ Bar No. 027463 (Admitted E.D. Texas)
jdowning@agilityiplaw.com
AGILITY IP LAW, LLP
14350 North 87th Street, Suite 190
Scottsdale, AZ  85260
Bus:  480-646-3434
Fax:  480-646-3438

Attorneys for KERANOS, LLC

## <u>CERTIFICATE OF SERVICE</u>

I, John W. Downing, hereby certify that on January 10, 2013, a copy of the foregoing

***Keranos, LLC's Second Set of Interrogatories (Nos. 8-19; SST Nos. 10-21) to Manufacturing***

***Entities*** was served upon the following parties or their counsel in the manner indicated:

| | |
|---|---|
| **Counsel for Defendants: Seiko Epson Corporation and Epson of America, Inc.** | |
| Christopher P. Broderick<br>christopher.broderick@dlapiper.com<br>Andrew V. Devkar<br>andrew.devkar@dlapiper.com<br>Richard de Bodo<br>richard.debodo@dlapiper.com<br>*DLA Piper LLP*<br>2000 Avenue of the Stars, Suite 400<br>Los Angeles, CA 90067 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |
| J. Thad Heartfield<br>thad@jth-law.com<br>M. Dru Montgomery<br>dru@jth-law.com<br>*The Heartfield Law Firm*<br>2195 Dowlen Road<br>Beaumont, TX 77706 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |
| **Counsel for Defendant: Freescale Semiconductor, Inc.** | |
| Bruce W. Slayden, II<br>bslayden@kslaw.com<br>Brian C. Banner<br>bbanner@kslaw.com<br>Jeffrey D. Mills<br>jmills@kslaw.com<br>*King & Spalding LLP*<br>401 Congress Avenue, Suite 3200<br>Austin, TX 78701 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |
| David L. Witcoff<br>dlwitcoff@jonesday.com<br>*Jones Day*<br>77 W. Wacker Drive<br>Chicago, IL 60601 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |

| | |
|---|---|
| *Counsel for Defendant: Microchip Technology, Inc.* | |
| Bruce W. Slayden, II<br>bslayden@kslaw.com<br>Brian C. Banner<br>bbanner@kslaw.com<br>Jeffrey D. Mills<br>jmills@kslaw.com<br>R. William Beard, Jr.<br>wbeard@kslaw.com<br>Amina S. Dammann<br>adammann@kslaw.com<br>Truman H. Fenton<br>tfenton@kslaw.com<br>*King & Spalding LLP*<br>401 Congress Avenue, Suite 3200<br>Austin, TX 78701 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |
| S. Calvin Capshaw, III<br>ccapshaw@capshawlaw.com<br>Elizabeth L. DeRieux<br>ederieux@capshawlaw.com<br>Daymon Jeffrey Rambin<br>jrambin@capshawlaw.com<br>*Capshaw DeRieux LLP*<br>114 E. Commerce Avenue<br>Gladewater, TX 75647 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |
| *Counsel for Defendant: Samsung Semiconductor, Inc. and Samsung Electronics Co. Ltd.* | |
| Bruce W. Slayden, II<br>bslayden@kslaw.com<br>Jeffrey D. Mills<br>jmills@kslaw.com<br>Brian C. Banner<br>bbanner@kslaw.com<br>Amina S. Dammann<br>adammann@kslaw.com<br>Truman H. Fenton<br>tfenton@kslaw.com<br>*King & Spalding LLP*<br>401 Congress Avenue, Suite 3200<br>Austin, TX 78701 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |
| John M. Caracappa<br>jcaracappa@steptoe.com<br>Paul A. Gennari<br>pgennari@steptoe.com<br>William J. Barrow<br>wbarrow@steptoe.com<br>*Steptoe & Johnson LLP*<br>1330 Connecticut Avenue, NW<br>Washington, DC 20036 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |

KERANOS, LLC'S SECOND SET OF INTERROGATORIES (NOS. 8-19; SST NOS. 10-21) TO MANUFACTURING ENTITIES

| | |
|---|---|
| Allen F. Gardner<br>allengardner@potterminton.com<br>Michael E. Jones<br>mikejones@potterminton.com<br>*Potter Minton PC*<br>110 N. College, Suite 500<br>Tyler, TX 75702 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |
| ***Counsel for Defendant:  Taiwan Semiconductor Manufacturing Company, Ltd. and TSMC North America*** | |
| Bruce W. Slayden, II<br>bslayden@kslaw.com<br>Brian C. Banner<br>bbanner@kslaw.com<br>Jeffrey D. Mills<br>jmills@kslaw.com<br>Amina S. Dammann<br>adammann@kslaw.com<br>*King & Spalding LLP*<br>401 Congress Avenue, Suite 3200<br>Austin, TX 78701 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |
| Steven H. Slater<br>slater@slater-matsil.com<br>Roger C. Knapp<br>knapp@slater-matsil.com<br>Natalie D. Swider<br>swider@slater-matsil.com<br>*Slater & Matsil, LLP*<br>17950 Preston Road, Suite 1000<br>Dallas, TX 75252 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |
| T. John Ward, Jr.<br>jw@wsfirm.com<br>*Ward & Smith Law Firm*<br>P.O. Box 1231<br>1127 Judson Road, Suite 220<br>Longview, TX  75606 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |
| ***Counsel for Defendant:  Toshiba Corporation and Toshiba America Electronic Components, Inc.*** | |
| Scott F. Partridge<br>scott.partridge@bakerbotts.com<br>Michael A. Hawes<br>michael.hawes@bakerbotts.com<br>Robinson Vu<br>robinson.vu@bakerbotts.com<br>*Baker Botts LLP*<br>One Shell Plaza<br>910 Louisiana Street<br>Houston, TX 77002<br>KeranosvToshiba@bakerbotts.com | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☐ Overnight Courier<br>☐ Via Facsimile<br>☒ Via Email (.pdf copy) |

KERANOS, LLC'S SECOND SET OF INTERROGATORIES (NOS. 8-19; SST NOS. 10-21) TO
MANUFACTURING ENTITIES

| | | |
|---|---|---|
| Michael C. Smith<br>michaelsmith@siebman.com<br>*Siebman Burg Phillips & Smith, LLP*<br>113 E. Austin Street<br>Marshall, TX 75671 | ☐<br>☐<br>☐<br>☐<br>☒ | Via First Class Mail<br>Via Hand Delivery<br>Overnight Courier<br>Via Facsimile<br>Via Email (.pdf copy) |
| **Counsel for Defendant: Silicon Storage Technology, Inc.** | | |
| Jeffrey D. Mills<br>jmills@kslaw.com<br>Amina S. Dammann<br>adammann@kslaw.com<br>*King & Spalding LLP*<br>401 Congress, Suite 3200<br>Austin, TX 78701 | ☐<br>☐<br>☐<br>☐<br>☒ | Via First Class Mail<br>Via Hand Delivery<br>Overnight Courier<br>Via Facsimile<br>Via Email (.pdf copy) |
| Elizabeth L. DeRieux<br>ederieux@capshawlaw.com<br>D. Jeffrey Rambin<br>jrambin@capshawlaw.com<br>*Capshaw DeRieux LLP*<br>114 E. Commerce Avenue<br>Gladewater, TX 75647 | ☐<br>☐<br>☐<br>☐<br>☒ | Via First Class Mail<br>Via Hand Delivery<br>Overnight Courier<br>Via Facsimile<br>Via Email (.pdf copy) |

  */s/ John W. Downing*
John W. Downing

# Exhibit E

**Banner, Brian**

| | |
|---|---|
| **From:** | John Downing [jdowning@agilityiplaw.com] |
| **Sent:** | Tuesday, February 12, 2013 5:07 PM |
| **To:** | Banner, Brian |
| **Cc:** | Michelle Breit; Mills, Jeff; Robinson VU; Andrew Spangler (spangler@sfipfirm.com); fussell@sfipfirm.com |

**Subject:** Keranos - Meet and Confer re Motion to Strike

Brian,

Based on the meet and confer phone call yesterday, we understand that the manufacturing defendants you represent intend to object to each interrogatory in Keranos' second set of interrogatories based on their assertion that Keranos exhausted its allowed 25 interrogatories through its first set of interrogatories served on those defendants. We also understand that your clients intend to file a motion to strike Keranos' second set of interrogatories on the same grounds. We were notified today that Toshiba will join the motion.

As we expressed during our call yesterday, your clients are making this argument despite not objecting to these so-called "subparts" in responding to Keranos' first set of interrogatories or in any way pointing out that they viewed the first set of interrogatories as exhausting Keranos' allotted interrogatories. Indeed, you raised this argument with us for the first time yesterday after having received service of the second set of interrogatories approximately 30 days earlier.

We do not agree that in the circumstances presented here an interrogatory seeking information related to the three patents in suit counts as three separate interrogatories. Nor do we agree that an interrogatory seeking information regarding "accused products" should count as a separate interrogatory for each accused product. Finally, we do not agree that, as Keranos' interrogatories are propounded, they should be counted as separate interrogatories to the extent they seek information related to facts, witnesses and documents concerning a single subject.

At one point, you also indicated your clients contend that Keranos' second set of interrogatories includes interrogatories that are also objectionable as overbroad and unduly burdensome. With regard to the first interrogatory in the second set, we pointed out the highly relevant nature of the interrogatory and informed you that your clients could respond to the interrogatory by grouping like products together and directing Keranos to already produced process flows that describe the method for manufacturing the products. We also offered to confer with you on any other interrogatories that your clients claim are objectionable as overbroad and unduly burdensome; but you declined our offer.

Further, during our call we pointed out that your clients have employed the same style for propounding interrogatories of which they now claim is objectionable. By way of example, SST's first set of interrogatories propounded several days before the meet and confer (interrogatory nos. 6, 10 and 13) seek information regarding "Accused Products." Employing the method of calculations which you raised yesterday for the first time, those interrogatories would number in the hundreds. Likewise, most of the interrogatories your client propounded seek information on all three "Asserted Patents" (Interrogatories 1, 3, 5, 7, 8, 9, 10, 12, 13), which would include a multiplier of three according to your calculations.

We understand that your clients intend to file a motion to strike Keranos' second set of interrogatories if Keranos will not agree to withdraw the interrogatories. We do not agree that your clients' position or that such a motion is well-founded. Accordingly, we decline to withdraw the interrogatories and intend to vehemently

oppose the motion.

-------------

[1]  Defendants appear to be ignoring the fact that the parties are entitled to serve more than 25 interrogatories between the two cases filed, based on defendants' insistence on such discovery during the parties' meet and confer regarding discovery and scheduling orders for the Consolidated DJ Action.

Regards,

**John W. Downing, Esq.**
**Otteson Law Group**
**Agility IP Law, LLP**
**14350 N. 87th Street**
**Scottsdale, AZ 85260**
**Tel:  480-646-3437**
**www.AgilityIPLaw.com**

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

# Exhibit F

Hon. Edward A. Infante (Ret.)
JAMS
Two Embarcadero Center, Suite 1500
San Francisco, CA 94111
415-774-2611
415-982-5287 (fax)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| RAMBUS INC., | Case No. C-08-03343 SI<br>Consolidated with Case No. C-08-05500 SI |
| Plaintiff, | |
| v. | **ORDER GRANTING NVIDIA'S MOTION TO COMPEL DISCLOSURES PURSUANT TO PATENT L.R. 3-1 AND 3-2 AND FOR STAY, AND DENYING RAMBUS'S MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES** |
| NVIDIA CORPORATION, | |
| Defendant. | |

NVIDIA Corporation ("NVIDIA") has filed a motion to compel disclosures pursuant to Patent Local Rules 3-1 and 3-2, for protective order, and to stay NVIDIA's Patent Local Rule 3-3 and 3-4 invalidity contentions. Rambus Corporation ("Rambus") has filed a motion to compel NVIDIA to substantively respond to four interrogatories propounded by Rambus. Both motions are opposed, and replies have been submitted. A telephonic hearing was held on August 24, 2011. The Special Master has considered the submissions and arguments of counsel and rules as follows:

### Background

In July 2008, Rambus filed the present action against NVIDIA, alleging patent infringement. Rambus's first amended complaint alleges that Rambus develops "memory interface solutions . . . and that Rambus licenses its technologies to various customers, who then incorporate them into various products" including memory controllers. First Amended Complaint, ¶¶ 1, 10. Rambus alleges that NVIDIA has been and is infringing, contributing to the infringement of, and/or actively inducing others to infringe fifteen Rambus patents, and that NVIDIA has made or sold products consisting of or including certain specified memory controllers (the "Accused Products"). *Id.*, ¶¶ 5, 11. "Accused Products" is defined to include "chipsets, graphics processors . . . and/or products that are part of NVIDIA's "GeForce,"

"Quador," "nForce," "Tesla," "Tegra," and/or "GoForce" product lines." *Id.*, ¶ 11. NVIDIA subsequently filed a complaint against Rambus alleging antitrust violations, which has been consolidated with the present action. On May 1, 2009, the undersigned was appointed as Special Master to oversee discovery in the consolidated cases.

On December 10, 2008, the United States International Trade Commission (the "ITC") issued a Notice of Investigation to determine whether a number of entities, including NVIDIA, were in violation of subsection (a)(1)(B) of section 337 of the Tariff Act of 1930 in connection with the importation into the Unites States of certain semiconductor chips having synchronous dynamic random access memory controllers and products containing same by reason of infringement of a number of Rambus patents (the "ITC action"). The ITC action involved a different set of patents than those at issue in the present case. On July 26, 2010, the ITC court issued a final determination of violation of section 337 by NVIDIA (and the other ITC respondents), a limited exclusion order and cease and desist orders to certain respondents, including NVIDIA. Pursuant to a prior order in this case, each party has granted to the other party access to discovery materials each party had produced in the ITC Action.

On March 21, 2011, the parties' "Stipulation and Order Re: Discovery Plan" was entered as a court order. Hubert Decl., Ex. 4. The Discovery Plan states that Rambus's infringement contentions and accompanying production under Patent Local Rules 3-1 & 3-2 "are due on May 12, 2011," and that NVIDIA's invalidity contentions and accompanying production under Rules 3-3 and 3-4 "are due on August 12, 2011." The parties also agreed that each party "may propound up to 40 written interrogatories, including all discreet subparts, allocated between these consolidated cases at the propounding party's sole discretion." *Id.*, Ex. 4 at 1-3.

On May 12, 2011, Rambus, pursuant to Patent Local Rule 3-1, served upon NVIDIA Rambus's "Disclosure of Asserted Claims and Infringement Contentions" (the "Disclosure"). Chatterjee Decl., ¶ 2 and Ex. A thereto. Rambus makes infringement disclosures with respect to ten Rambus patents, and over 400 "accused" NVIDIA products. *See id.*

On June 6, 2011, Rambus served upon NVIDIA a first set of interrogatories, nos. 1-16.

On June 20, 2011, Rambus and NVIDIA filed Supplemental Case Management Conference Statements. NVIDIA's statement, *inter alia*, indicated that NVIDIA was currently assessing the sufficiency of Rambus's Disclosure and believed that the contentions were insufficient. Hubert Decl., Ex. 5. NVIDIA further stated "[a]bsent further Court orders,

NVIDIA's invalidity contentions are due on August 12, 2011." *Id.* The case management conference was held on June 24, 2011. On June 28, 2011, the Court issued an order after hearing wherein the Court adopted "counsel's stipulated patent schedule," and stated *inter alia* that NVIDIA's preliminary invalidity contentions were to be served by August 12, 2011. *Id.*, Ex. 6.

On June 28, 2011, counsel for NVIDIA sent a letter to counsel for Rambus asserting alleged deficiencies in Rambus's Disclosure. *Id.*, ¶ 4 and Ex. C thereto. Further meet and confer efforts were unsuccessful. On July 11, 2011, NVIDIA provided Rambus with response to Rambus's first set of interrogatories. With respect to interrogatories 1, 4, 10 and 11, NVIDIA's responses consist entirely of objections, including objections that: (a) the interrogatories are premature due to Rambus's failure to disclose NVIDIA's Accused Products with proper specificity in its infringement contentions; and (b) the interrogatories exceed the total number of interrogatories (40) that Rambus may propound in this case.

On July 12, 2011, counsel for Rambus sent a letter to the undersigned requesting a hearing and order regarding NVIDIA's allegedly deficient responses to the interrogatories. After additional letters from NVIDIA and Rambus, the parties were ordered to meet and confer regarding NVIDIA's interrogatory responses. The further meet and confer discussions narrowed, but did not eliminate, the parties' disputes with respect to NVIDIA's responses to the interrogatories. Rambus, however, did agree "to limit its infringement-related inquiries to the patent claims identified in Rambus's infringement contentions, and agrees to limit its validity-related inquiries to those claims NVIDIA contends are invalid," and indicated that Rambus "is willing to time-limit its interrogatories seeking damages data to July 10, 2002 and later."

On July 29, 2011, NVIDIA filed its motion to compel disclosures pursuant to Patent Local Rule 3-1 and 3-2, for protective order, and to stay NVIDIA's Patent Local Rule 3-3 and 3-4 Invalidity Contentions. Also on July 29, 2011, Rambus submitted a motion to compel NVIDIA to provide further responses to interrogatories 1, 4, 10 and 11.

On August 12, 2011, NVIDIA served upon Rambus NVIDIA's "Patent Local Rule 3-3 and 3-4 Invalidity Contentions."

<u>Legal Standard</u>

The Patent Local Rules for the United States District Court for the Northern District of California require that no later than 14 days after the Initial Case Management Conference, a party claiming patent infringement shall serve a "Disclosure of Asserted Claims and Infringement

Case 2:13-cv-00017-RWS-RSP Document 24 Filed 02/14/13 Page 66 of 142 PageID #:
Case 3:08-cv-03343-SI Document 124 Filed 06/24/11 Page 4 of 23 PageID #:
292

Contentions." Patent L.R. 3-1. The disclosure shall contain *inter alia* each claim of each patent-in-suit that is allegedly infringed, each accused product (on a claim by claim basis), and a chart specifically identifying where each claim is found within each accused product. *See* Patent L.R. 3-1.

"The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Bender v. Maxim Integrated Products, Inc.,* 2010 WL 1135762 at *2 (N.D. Cal., Mar. 22, 2010, C09-01152 SI) (citation and internal quotation omitted). "Patent L.R. 3-1, more specifically, is a discovery device that takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Id.* (citation and internal quotations omitted). "The purpose behind Rule 3-1 is to require a plaintiff to 'crystallize' its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Freescale Semiconductor, Inc.* 2010 WL 1689465 at *2 (N.D. Cal., Apr. 26, 2010, C 09-1156 PHJ MEJ). "Whether those theories may ultimately be vindicated through claim construction and at trial is an entirely separate matter from whether Patent LR 3-1 has been satisfied." *Network Caching Technology, LLC v. Novell, Inc.,* 2003 WL 21699799 *4 (N.D. Cal., Mar. 21, 2003, C-01-2079 VRW).

## Discussion

## I. Motion to Compel Disclosures Pursuant to Patent Rules 3-1 and 3-2

NVIDIA contends that Rambus's Disclosure does not comply with Patent L.R. 3-1, as it: (1) fails to identify an actual priority date, instead relying on meaningless language such as "at least the priority date"; (2) fails to identify a single accused NVIDIA product by name or model number on a claim by claim basis; (3) fails to locate where each element of its claims is found within any NVIDIA product, instead merely citing to Hynix datasheets and industry standards that are not for any NVIDIA product; (4) provides general claim charts for only 11 of "at least" 400 identified products named that do not identify a single aspect of any NVIDIA products; and (5) fails to sufficiently describe alleged acts of indirect infringement by NVIDIA. NVIDIA's motion seeks an order compelling Rambus to provide a disclosure of asserted claims and infringement contentions that comply with Patent Local Rules 3-1 and 3-2; and an order that staying infringement-related discovery and NVIDIA's invalidity contentions until a sufficient disclosure is provided. Each argument will be addressed in turn.

## A. Priority Date

NVIDIA first contends that Rambus's Disclosure fails to disclose the actual priority date each claim allegedly is entitled. Rambus asserts that it disclosed the priority date for each patent-in-suit as required by Patent L.R. 3-1(f).

For any patent that claims priority to an earlier application, a disclosure shall contain "the priority date to which each asserted claim allegedly is entitled." Patent L.R. 3-1(f). In pertinent part, Rambus's Disclosure provides as follows:

> With respect to priority to earlier applications, each of the asserted claims of the Asserted Farmwald/Horowitz Patents is entitled to **at least the priority date of** U.S. Patent Application No. 07/510,898, filed on April 18, 1990. Each of the asserted claims of the Barth II Patents is entitled to **at least the priority date of** U.S. Provisional Application No. 60/061,770, filed on Oct. 10, 1997. . . .

Chatterjee Decl., Ex. A at 10-11 (emphasis added).

Rambus's use of the phrase "at least the priority date of" does not adequately specify the priority date to which each claim alleged is entitled, and thus does not comply with Patent L.R. 3-1(f). Rambus's opposition makes clear that the priority dates it is claiming are April 18, 1990 and October 10, 1997. Rambus must amend its Disclosure to comply with Patent L.R. 3-1(f).

## B. Identification of Accused Products

NVIDIA contends that Rambus's Disclosure fails to specifically identify the accused NVIDIA products that Rambus believes infringe its patents on a claim by claim basis, as required by Patent L.R. 3-1(b). NVIDIA asserts that: (1) Rambus's vague terms such "[t]he accused devices include at least" and "the accused device product numbers . . .which should be understood to be exemplary in nature" amount to no disclosure at all; (2) Rambus fails to relate even one asserted claim to the over 400 NVIDIA products listed in exhibit A to the Disclosure; (3) Rambus's remark that exhibit A is "understood to be exemplary" does not limit Rambus's accused products to those named in exhibit A, and instead Rambus's Disclosure "may accuse all NVIDIA products of infringing its claims;" and (4) Rambus violates Patent L.R. 3-1(b) by not identifying specific versions of the accused NVIDIA products.

Rambus contends that it has identified the accused products for each asserted claim in compliance with Patent L.R. 3-1(b). Rambus asserts that the accused products "are accused

according to their JEDEC standard memory interface (e.g., DDR, DDR2, etc.), and section I.A of the Disclosure states "which categories of accused products infringe what claims." Rambus asserts that "the model numbers known to Rambus were all listed in [exhibit A to the Disclosure] along with a reference, for each product, to the category of memory interface into which each product falls, over thirteen pages," and that "the interface for a particular part listed in [exhibit A to the Disclosure] determines which claims the part is accused of infringing in [Section I.A of the Disclosure]." Rambus asserts that exhibit A "places products into categories that are accused on a claim-by-claim basis in . . . Section I.A, not Exhibit A," and exhibit A [the Disclosure] does tie the named products to the charts by classifying their memory interface type. Rambus further asserts that its use of the words "at least" and "exemplary" as applied to accused products is appropriate, and no known "versions" are excluded from the Disclosure.

In reply, NVIDIA argues that Rambus may not identify NVIDIA's accused products by their functional capability to interface with a standardized memory device, rather than the product name. NVIDIA asserts that by identifying NVIDIA products by their functional capabilities, Rambus is asserting all "past, present and as yet unmade future versions" of NVIDIA's products do and will infringe its patents, and such a Disclosure is insufficient.

Patent L.R. 3-1(b) provides that separately for each asserted claim, a Disclosure shall contain "each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware." Patent L.R. 3-1(b) further provides that:

> This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

In *Intertrust Techs. Corp. v. Microsoft Corp.*, 2003 WL 23120174 (N.D. Cal. Dec. 1, 2003, C 01-1640 SBA), InterTrust alleged that many Microsoft software products employed a module that infringed upon 150 claims from 11 InterTrust patents. In its Patent L.R. 3-1 disclosure, InterTrust identified Microsoft's allegedly infringing software by their function (rather than the product name) and did not name the version number of the allegedly infringing product. The court found that the disclosure did not comport with the spirit of the Patent Local Rules, stating in pertinent part that:

6

InterTrust asserts that past, present and as yet unmade future versions of Microsoft's products do and will infringe its patents. Microsoft, however, cannot be expected to defend against claims of infringement for products that it has not produced yet. Nor can Microsoft be expected to guess which versions of its products InterTrust believes to have software modules that infringe its software patents.

*Id.* at *4.

Section I.A of Rambus's Disclosure addresses "Asserted Claims," and provides in part as follows:

Rambus asserts the following claims against NVIDIA's products that consist of or contain a controller for controlling SDR SDRAM, DDR SDRAM, DDR2 SDRAM, DDR3 SDRAM, GDDR3 SDRAM, GDDR5 SDRAM, LPDDR SDRAM, LPDDR2 SDRAM, gDDR SDRAM, gDDR2 SDRAM, and/or gDDR3 SDRAM memory devices:

> Claims 36, 38, 39, 40, 43, 44, 45, and 46 of the '281 Patent;
> Claims 28, 29, 30, 32, 34, 35, and 37 of the '020 Patent; and
> Claim 32 of the '997 Patent.

In addition, Rambus asserts the following claims against NVIDIA's products that consist of or contain a controller for controlling SDR SDRAM, DDR SDRAM, DDR2 SDRAM, DDR3 SDRAM, GDDR3 SDRAM, LPDDR SDRAM, LPDDR2 SDRAM, gDDR SDRAM, gDDR2 SDRAM, and/or gDDR3 SDRAM memory devices:

> Claim 42 of the '281 Patent;
> Claims 1, 2, 10, 11, 12, 13, 17, 18, 19, 21, 38, and 47 of the '020 Patent; and
> Claims 1, 2, 3, 19, 26, 31, and 38 of the '997 Patent.

. . .

Each of the claims listed in this section (the "Asserted Claims") is infringed directly and indirectly. NVIDIA infringes each of the Asserted Claims under at least 35 U.S.C. § 271 (a), (b), and (c).

Chatterjee Decl., Ex. A at 2-4.

Section I.B of the Disclosure addresses the "Accused Devices and Methods," and states:

> **The accused devices include at least products** containing or comprising memory controllers capable of interfacing with and/or controlling any SDR SDRAM, DDR SDRAM, DDR2 SDRAM, DDR3 SDRAM, GDDR3 SDRAM, GDDR5 SDRAM, LPDDR SDRAM, LPDDR2 SDRAM, gDDR SDRAM, gDDR2 SDRAM, and/or gDDR3 SDRAM memory device.
> Rambus's investigation is ongoing, discovery is in its early stages . . . .
> Accordingly, these disclosures are based on information available to Rambus at this time. **Rambus is currently aware of the accused device product numbers listed in Exhibit A, which should be understood to be exemplary in nature based on information available to Rambus.** . . . (emphasis added)

7

*Id.*, Ex. A at 5.

Exhibit A to Rambus's Disclosure, entitled "NVIDIA Accused Products," is a thirteen page document that (according to NVIDIA) identifies over 400 NVIDIA products. The following portion of page one of the document exemplifies how Rambus describes the accused products:

| Memory Controller Type | Model Number | GPU[2] |
|---|---|---|
| LPDDR | Tegra 600 | |
| | Tegra 650 | |
| | Tegra APX 2500 | AP15 |
| | Tegra APX 2600 | AP16 |
| LPDDR2 | Tegra 230 | AP20 |
| DDR2 & LPDDR2[3] | Tegra 250 | AP20 |
| SDR | GeForce2 MX 200 | NV11 |
| | PP5022 Digital Media Management SoC | |
| SDR & DDR[4] | GeForce2 MX | NV11 |
| | GeForce2 MX 400 | NV11 |
| | GeForce256 | NV10 |
| | GeForce4 MX 420 | NV17 |
| | GeForce4 MX 420 with AGP8X | NV17 |

Footnote 1 to exhibit A to the Disclosure states that:

The NVIDIA products identified herein each contain or comprise a graphics processing unit (GPU) or equivalent. Accused NVIDIA GPU integrated circuit devices are incorporated into products such as graphics cards or chipsets by NVIDIA and third party manufacturers. Such products manufactured, assembled, and/or branded by third parties are based on the NVIDIA products and/or NVIDIA reference designs. Accordingly, the part numbers named herein should be understood to disclose any such corresponding products manufactured, assembled, and/or branded by third parties incorporating accused NVIDIA GPUs. For example, third party companies that manufacture, assemble, or brand accused products may designate the product by including in the product name both their own brand as well as reference in whole or in part to the corresponding NVIDIA product number. The accused instrumentalities include, but are not limited to such instances.

It is assumed that references to a product refer to all versions and variations of the product. Accused NVIDIA GPUs include, for example, versions of accused NVIDIA GPUs, such as the Crush11, Crush12, Crush17, Crush18, Crush19, MCP89 and G78. . . .

Chatterjee Decl., Ex. A at 1 to Ex. A (the Disclosure).

Rambus's Disclosure does not comply with Patent L.R. 3-1(b). Section I.B of the Rambus Disclosure does not specifically identify each accused product. Rambus's statement that the "accused devices include at least products" does not place any limit on the accused devices at

Case 2:13-cv-00017-RWS-RSP   Document 8   Filed 02/04/13   Page 71 of 142 PageID #:
Case3:08-cv-03343-SI   Document 24   Filed 06/24/11   Page 91 of 231
297

issue. This problem is repeated in Rambus's subsequent statement that its list of accused products of which it is aware "should be understood to be exemplary in nature." By inclusion of these statements, Rambus avoids its obligation to specifically identify the accused products currently at issue. Rambus likewise has not adequately identified the "versions" of the products at issue. Rambus's statement in footnote 1 to exhibit A that "[i]t is assumed that references to a product refer to all versions and variations of the product" is impermissibly vague. To the extent that Rambus is alleging that all versions of the products named in exhibit A are at issue, Rambus must explicitly so state in section 1.B of its Disclosure.

Rambus has likewise failed to identify the accused products on a claim by claim basis. As an initial matter, contrary to the plain requirement of Patent L.R. 3-1(b), section 1.B of the Disclosure does not identify any specific claim of a Rambus patent. Section 1.B likewise does not clearly identify a specific NVIDIA product. Section I.B does so *only* by its reference to exhibit A. Rambus's reference in section 1.B to NVIDIA products by their use of certain JEDEC standard memory interfaces rather than simply (or also) specifically referring to the specific NVIDIA products (e.g., Tegra 600) is inadequate. Finally, due only in part to the above problems, section 1.B of the Disclosure does not expressly link an accused product to a specific claim as required by Patent L.R. 3-1(b). While the undersigned is able to deduce from a review of Section I.A., Section I.B and exhibit A to the Disclosure that Rambus is asserting, *inter alia*, that NVIDIA's GeForce2 MX 200 and PP5022 Digital Media Management SoC allegedly infringe claims 36, 38, 39, 40, 43, 44, 45, and 46 of the '281 Patent, Rambus's Disclosure fails to set forth this information in a straightforward fashion.

Consistent with the foregoing, Rambus must amend its Disclosure to comply with Patent L.R. 3-1(b). In the event that Rambus clarifies the specific devices at issue (by *inter alia* removal of the "at least" and "exemplary in nature" language in the current disclosure) and reorganizes Section I.B of its Disclosure to more clearly identify the accused products on a claim by claim basis, Rambus's amended Disclosure will likely be found to comply with Patent L.R. 3-1(b).

C. **Location of Asserted Claim in Each Accused Product**

NVIDIA next contends that Rambus's Disclosure fails to identify where each element of each asserted claim is found within each accused product as required by Patent L.R. 3-1(c). NVIDIA asserts that: (1) Rambus may not assume that elements of each claim are present in the accused product; (2) Rambus may not rely upon SDRAM standards in its infringement

Case 2:13-cv-00017-RWS-RSP Document 241 Filed 02/14/13 Page 72 of 142 PageID #:
Case3:08-cv-03343-SI Document 241 Filed 03/24/11 Page 10 of 25 PageID #:
298

contentions when none of NVIDIA's accused products are SDRAM devices; and (3) Rambus may not use representative products in its charts without articulating how the accused products share the same or substantially the same infringing circuitry as the representative products, and Rambus has not done so.

Rambus contends that it has disclosed where each asserted claim element is found in each accused product in full compliance with Patent L.R. 3-1(c). Rambus asserts that it may comply with Patent L.R. 3-1 by setting forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided beyond the mere language of the claims themselves; that evidence is not required; that Rambus's allegations involve industry standards that NVIDIA and its partners advertise that they meet; and that reference to SDRAM standards and memory datasheets is permitted (citing *Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1227 (Fed. Cir. 2010).

Patent L.R. 3-1(c) provides that a disclosure must include "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." "For infringement contentions to satisfy Patent L.R. 3-1, "plaintiff must compare an accused product to its patents on a claim by claim, element by element basis for at least one of each defendant's products ... reverse engineering or its equivalent are required." *Bender,* 2010 WL 1135762 at *2 (internal parentheses omitted). "Rule 3-1 does not necessarily require the patent holder to produce evidence of infringement, but it must map specific elements of Defendants' alleged infringing products onto the Plaintiff's claim construction." *Shared Memory Graphics, supra, at* *3.

In *Bender v. Maxim, supra,* the plaintiff's infringement contentions consisted of two documents. The first listed more than 200 products made by defendant that allegedly infringed the plaintiff's products, some of which are categorized in groups. Other accused products were not categorized and were only listed by product number. The second document contained 9 claim charts, which allegedly represented all 200-plus accused products. Each chart attempted to match the elements of the patent to components within a Maxim product, and purported to identify the specific location of the patented element using Maxim's commercially available datasheets. *Id.* at *2. The defendant argued that the plaintiff had failed to comply with Patent L.R. 3-1 because the

infringement contentions did not identify the location, in each accused product, of each element of each asserted claim, and the plaintiff's claim charts had only been produced for a handful of the accused products. The court agreed with the defendant, stating that:

> Plaintiff's claim charts do not actually specify the location of each element within the accused product. Rather, the Court is asked to assume that certain elements of the patent are present in the accused product. . . . While plaintiff's statements may not be untrue, they are based on assumptions. The Court will not order defendant to produce proprietary schematics for over 200 products based on an assumption.

*Id.* at *2. The Court also agreed with the defendant's contention that the plaintiff has not provided an adequate explanation of why the claim charts were representative of all of the accused products, noting that the claim charts failed to place all of the accused products into a representative category. *Id.* at *3. "Although over 200 products are accused in the infringement contentions, fewer than 50 are listed on the representative claim charts." *Id.* "Since no information is given that would suggest the proper category for each of the remaining products, the infringement contentions fail to comply with Patent L.R. 3-1." *Id.*

Section I.C of Rambus's Disclosure is entitled "Claim Charts," and provides in pertinent part that:

> Claim charts identifying the location of every element of every asserted claim of the Asserted Farmwald/Horowitz Patents within the accused devices are attached hereto as Exhibits 1-6. Claim charts identifying the location of every element of every asserted claim of the Asserted Barth II Patents within the accused devices are attached hereto as Exhibits 7-10. To avoid unnecessary repetition, the claim charts refer to the following representative parts:
>
> The NVIDIA GeForce2 MX200 (which is capable of interfacing to SDR SDRAM) (see Attachment A);
> The NVIDIA GeForce2 MX (which is capable of interfacing to DDR SDRAM) (see Attachment B);
> The NVIDIA GeForce 210 (which is capable of interfacing to DDR2 SDRAM) (see Attachment C);
> The NVIDIA GeForce GT 220 (which is capable of interfacing to DDR3 SDRAM) (see Attachment D);
> The NVIDIA GeForce 7900 GTX (which is capable of interfacing to GDDR3 SDRAM) (see Attachment E);
> The NVIDIA GeForce GTX 580 (which is capable of interfacing to GDDR5 SDRAM) (see Attachment F);
> The NVIDIA Tegra APX 2600 (which is capable of interfacing to LPDDR SDRAM) (see Attachment G);

The NVIDIA Tegra 230 (which is capable of interfacing to LPDDR2 SDRAM) (see Attachment H);
The NVIDIA GeForce 6200 (which is capable of interfacing to gDDR SDRAM) (see Attachment I);
The NVIDIA GeForce 8500 GT (which is capable of interfacing to gDDR2 SDRAM) (see Attachment J);
The NVIDIA GeForce GT 430 (which is capable of interfacing to gDDR3 SDRAM) (see Attachment K);

Chatterjee Decl., Ex. A at 5-6. Section I.C also indicates that the claim charts refer to: (1) the JEDEC Standard SDRAM memory interface specifications (e.g. DDR, DDR2 etc.) for the categories of memory interface into which Rambus asserts each product falls; and (2) datasheets for five Hynix memory interface products. *Id.*, Ex. A at 6-7.

Rambus's Disclosure does not comply with Patent L.R. 3-1(c). In brief, the charts do not identify where each limitation of each asserted claim is found within each NVIDIA accused product. A review of Rambus's claims charts (Chatterjee Decl., Exs. E-N) reveals that, as asserted by NVIDIA, Rambus has identified the location of the elements of the claims of the patents at issue only within a JEDEC SDRAM specification or within a *Hynix* SDRAM Datasheet. For example, page 1 of exhibit E, which is the claim chart for the '097 patent, states the following with respect to the DDR portion of claim 1 of the patent:

> NVIDIA's Accused DDR Products provide a first portion of the data to the memory device synchronously with respect to a rising edge transition of an external clock signal. (*See, e.g.*, JEDEC_DDR at 33 "Write Burst")

The claim charts make no effort to state whether and where the cited elements within the SDRAM specifications and Hynix datasheets are found within any NVIDIA accused product. NVIDIA asserts, and Rambus does not dispute, that the NVIDIA accused products are not SDRAM devices. Likewise, Rambus has failed to explain how *Hynix* datasheets are applicable to NVIDIA products. Instead, as in *Bender*, Rambus appears to ask the court to assume that the cited portions of the SDRAM specifications or the portions of the Hynix datasheets are found in the NVIDIA accused products. As such, the claims charts do not locate where each limitation is found in an NVIDIA accused product. Moreover, while Rambus has identified over 400 NVIDIA products, Rambus's disclosure only provides claim charts for 11 of these products. While Rambus may ultimately be entitled to provide representative claims charts, as in *Bender*,

12

Rambus's Disclosure does not provide an adequate explanation of why the claim charts provided are representative of all of the NVIDIA accused products.

Rambus's arguments that it has complied with Patent L.R. 3-1(c) are unpersuasive. Rambus first asserts that NVIDIA is conflating infringement contentions with proof of infringement, and cites to a number of cases for the proposition that Rambus need not produce evidence of infringement to satisfy Patent L.R. 3-1, and that Rambus may comply with Patent L.R. 3-1 by setting set forth theories of infringement with specificity. *See e.g.*, *Network Caching*, *supra*, at *4 and *Renesas Technology Corp. v. Nanya Technology Corp.*, 2005 WL 2000926 *5 (N.D. Cal., Aug. 18, 2005, C03-05709JF(HRL)).  While such statements may be found in the cited cases, neither case excuses a plaintiff from compliance with Patent L.R. 3-1(c).  Indeed both cases state that a plaintiff must map specific elements of the defendant's allegedly infringing products onto the plaintiff's claim construction, and both cases conclude that the plaintiff had adequately set forth the location where the claims were found in the accused products and thus had complied with Patent L.R. 3-1(c).  *See Network Caching* at *4-*5 and *Renesas* at *5-*7 (N.D. Cal., Aug. 18, 2005, C03-05709JF(HRL)).  In short, whether or not evidence is required, Rambus must comply with Patent L.R. 3-1(c).

Rambus further asserts that its reliance upon SDRAM standards and memory datasheets is permitted under Federal Circuit precedent, citing *Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010).  In *Fujitsu*, the parties disputed whether an industry standard could be used in assessing infringement.  In pertinent part, the court concluded as follows:

> We hold that a district court may rely on an industry standard in analyzing infringement. If a district court construes the claims and finds that the reach of the claims includes any device that practices a standard, then this can be sufficient for a finding of infringement. We agree that claims should be compared to the accused product to determine infringement. *However, if an accused product operates in accordance with a standard, then comparing the claims to that standard is the same as comparing the claims to the accused product.* . . . An accused infringer is free to either prove that the claims do not cover all implementations of the standard or to prove that it does not practice the standard.
>
> . . .
>
> We acknowledge, however, that in many instances, an industry standard does not provide the level of specificity required to establish that practicing that standard would always result in infringement. . . . In these instances, it is not sufficient for the patent owner to establish infringement by arguing that the product admittedly practices the standard, therefore it infringes. In these cases, the patent owner must compare the claims to the accused products or, if appropriate, prove that the accused products implement any

13

relevant optional sections of the standard. This should alleviate any concern about the use of standard compliance in assessing patent infringement. Only in the situation where a patent covers every possible implementation of a standard will it be enough to prove infringement by showing standard compliance.

*Fujitsu*, 620 F.3d at 1327-1328 (emphasis added).

In *WiAV Networks, LLC v. 3Com Corp.*, 2010 WL 3895047 (N.D. Cal., Oct. 1, 2010, C 10-03448 WHA), the court noted the following with respect to a plaintiff's reliance upon *Fujitsu*:

In *Fujitsu*, the Federal Circuit recognized that mere compliance with an industry protocol does not necessarily establish that all compliant devices implement the protocol in the same way. Different accused devices may achieve compliance with an industry standard or protocol through varying designs, with different tolerances, and with competing features. Additionally, the *Fujitsu* decision observed that an asserted patent claim - properly construed - might not cover all implementations of an industry standard. In such situations, the Federal Circuit emphasized that infringement would have to be proven on a product-by-product basis.

*Id.* at *2.

As argued by NVIDIA, Rambus does not cite to any authority that allows it to cite to an industry standard for a non-accused device in lieu of locating each element within an NVIDIA accused device. While *Fujitsu* may (or may not) permit Rambus to rely upon SDRAM standards and Hynix memory datasheets as evidence of infringement, it does not excuse Rambus's non-compliance with Patent L.R. 3-1(c). Moreover, *Fujitsu* limits the use of industry standards to when "an accused product operates in accordance with a standard." The primary purpose of the Patent Local Rules is to require a plaintiff to articulate its infringement claims with specificity. *See Bender*, 2010 WL 1135762 at *2. Rambus's chart fails to clearly set forth its infringement claims due to its failure to explain how the accused devices operate in accordance with the SDRAM standards. Rambus must amend its Disclosure to identify where each limitation of each asserted claim is found within each NVIDIA accused product, and to articulate with greater specificity how the accused devices operate in accordance with the identified SDRAM standards.

**D.  Indirect Infringement**

NVIDIA contends that Rambus's disclosure fails to sufficiently describe acts of indirect infringement. More specifically, NVIDIA asserts that: (1) Rambus violates Patent L.R. 3-1(d) by not sufficiently describing acts of induced infringement by NVIDIA, i.e., acts where NVIDIA had actual knowledge that its accused products infringe on Rambus' Asserted Patents, or that NVIDIA acted with willful blindness to that knowledge, citing *Global-Tech Appliances, Inc. v.*

*SEB S.A.,* 131 S.Ct. 2060, 2068, 270 (2011); and (2) Rambus violates Patent L.R. 3-1(d) by not specifically identifying acts of direct infringement by third party infringers Zotac International (MCO) Limited, PNY Technologies, Inc., Jaton Corp., Elitegroup Computer Systems Co., Ltd., Galaxy Microsystems Ltd., and Arcade FX.

Rambus contends that its contentions disclose that NVIDIA acted with the requisite knowledge and/or willful blindness, and that it fully identified acts of third party direct infringement.

For each claim which is alleged to have been indirectly infringed, a disclosure must contain "an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement." Patent L.R. 3-1(d). "Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described." *Id.* In *Bender, supra*, the plaintiff's indirect infringement contentions did not specify any third party, and did "not describe any acts committed by a third party that would suggest direct infringement," and for these reasons were found not to comply with Patent L.R. 3-1(d). *Bender* at *3.

On May 31, 2011, the Supreme Court held that induced infringement under 35 U.S.C § 271(b) "requires knowledge of the existence of the patent that is infringed," and thus "requires knowledge that the induced acts constitute patent infringement." *See Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S.Ct. 2060, 2068 (2011). The Supreme Court further concluded that the doctrine of willful blindness applies in civil lawsuits for induced patent infringement under 35 U.S.C. § 271(b). *Id.* at 2069. The two basic requirements of the doctrine of willful blindness are that: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* at 2070. "Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.* at 2070-2071.

Section D of Rambus's disclosure, entitled "Indirect Infringement," states in pertinent part as follows:

> Rambus alleges that NVIDIA has indirectly infringed (through contributory and/or induced infringement) all of the above-listed Asserted Claims of the Asserted Patents. Direct infringers include third parties, such as NVIDIA Board Partners, who incorporate the accused devices into their own products and make, use, sell, offer for sale, and/or

15

Case 2:13-cv-00017-RWS-RSP Document 241 Filed 02/14/11 Page 78 of 142 PageID #:
Case 3:08-cv-03343-SI Document 241 Filed 08/24/11 Page 16 of 23
304

import their own products in the United States. Such third party direct infringers include, without limitation, companies such as those set forth in the Complaint in ITC Investigation No. 337-TA-661 ("ITC 661 Investigation"), served Nov. 6, 2008, ("ITC 661 Investigation Complaint") at ¶¶24-152, incorporated herein.[fn3] *See also* Exhibits 22-44 to the ITC 661 Investigation Complaint, showing additional evidence of indirect infringement by NVIDIA and related direct infringement by third parties, also incorporated herein. *Other direct infringers who incorporate the accused devices into their own products and make, use, sell, offer for sale, and/or import their own products in the United States include, without limitation, ZOTAC International (MCO) Limited., PNY Technologies, Inc., Jaton Corporation, Elitegroup Computer Systems Co., Ltd., GALAXY Microsystems Ltd., and Arcade FX.*[fn4] (emphasis added) [Footnote 4 states "*See, e.g.*, http://www.nvidia.com/object/pf_boardpartners.html, attached as Exhibit B].

Direct infringers also include NVIDIA product resellers, retailers, customers, and end users. Resellers, retailers, and distributors have directly infringed the Asserted Claims at least by selling, offering for sale, importing, or using (e.g., through testing, demonstrations, etc.) NVIDIA's accused devices. End users have also directly infringed the Asserted Claims by operating the accused devices as intended and encouraged by NVIDIA, including by operating the products with JEDEC compliant memory devices. See also Exhibit C (ITC 661 Investigation Initial Determination, pp. 41-44), exhibits thereto and citations therein.

NVIDIA had knowledge of one or more of the Asserted Patents prior to the filing of this case on July 10, 2008, and knowledge of each of the Asserted Patents by at least July 10, 2008. NVIDIA has had prior knowledge of Rambus's patents and technology as set forth below in Section H (Willful Infringement), which is incorporated herein. Rambus is well-known to NVIDIA and the industry for its advancements in memory and memory controller technology. For over eleven years, NVIDIA also has studied and has obtained and/or developed specific knowledge with respect to Rambus technology and patents. See also Exhibit C (ITC 661 Investigation Initial Determination at 41-44, exhibits thereto and citations therein); and, Section H (Willful Infringement), below. To any extent that NVIDIA denies its knowledge of the Asserted Patents during any relevant time period, NVIDIA's actions nevertheless would constitute at least deliberate indifference to Rambus's patent rights.

At no point did NVIDIA ever cease to sell its products, nor did it attempt to change how its products function or take any steps to avoid infringement or to cease inducing others to infringe. By selling and/or offering to sell the accused devices to third parties, NVIDIA has induced acts by third parties that NVIDIA knew or should have known would constitute direct infringement of the Asserted Patents. NVIDIA has actively induced infringement of the Asserted Patents by designing the accused devices to be capable of infringement and by promoting and encouraging the use of its products by the third parties in ways that infringe the Asserted Patents. NVIDIA also has induced infringement by its provision of reference designs and various technical specifications to third party infringers. NVIDIA further has induced third party manufacturers and others to test accused devices in the United States (including, without limitation, to ensure

16

Case 2:13-cv-00017-RWS-RSP   Document 241   Filed 02/14/13   Page 79 of 142 PageID #:
Case3:08-cv-05343-SI   Document 241   Filed 08/24/11   Page 79 of 142
305

interoperability, compliance, certification, reliability, and/or quality control), which necessarily results in additional infringing uses.

Chatterjee Decl., Ex. A at 7-9. Section H of Rambus's disclosure, entitled "Willful Infringement," states *inter alia* that: "NVIDIA has been aware of Rambus's patents, including patents related to the Asserted Farmwald/Horowitz Patents, and Rambus's patented technology since prior to July 10, 2001, the issue date of the earliest-issued Asserted Patent;" and that "NVIDIA has been aware of its infringement of one or more of the Asserted Patents since at least March 26, 2004" and alleges facts to support these assertions. *Id.*, Ex. A at 12-14.

Portions of Rambus's indirect infringement disclosures fail to comply with Patent L.R. 3-1(d). As argued by NVIDIA, Rambus's disclosure does not specifically identify acts of direct infringement by alleged third party infringers Zotac International (MCO) Limited, PNY Technologies, Inc., Jaton Corp., Elitegroup Computer Systems Co., Ltd., Galaxy Microsystems Ltd., and Arcade FX. The indirect infringement contentions with respect to these third parties therefore fail to comply with Patent L.R. 3-1(d). With respect to Rambus's induced infringement contentions, contrary to NVIDIA's argument, Rambus's disclosure adequately sets forth that NVIDIA acted with actual knowledge that its accused products infringe on Rambus's asserted patents. Rambus's Disclosure, however, does not set forth sufficient specific facts to show that NVIDIA acted with willful blindness. This is unsurprising given that the *Global-Tech* decision setting forth the scope of the doctrine was issued after Rambus filed its present Disclosure.

Accordingly, Rambus must amend section I.D of its disclosure to: (1) specifically identify acts of direct infringement by alleged third party infringers Zotac International (MCO) Limited, PNY Technologies, Inc., Jaton Corp., Elitegroup Computer Systems Co., Ltd., Galaxy Microsystems Ltd., and Arcade FX; and (2) more specifically describe how NVIDIA acted with willful blindness in order to conform its disclosure with the standard set forth in the *Global Tech* decision.

### E.  **Stay of Infringement-Related Discovery and NVIDIA's Rule 3-3 & 3-4 Obligations**

NVIDIA contends that in light of the inadequacy of Rambus's Disclosure, a stay of infringement-related discovery is warranted.

Rambus contends that the request for a stay should be denied due to the parties' stipulated invalidity contention deadline. Rambus asserts that as a result of the parties' prior stipulations, NVIDIA has waived any argument that Rambus's infringement contentions warrant a delay in either the August 12th deadline or the schedule for infringement-related discovery.

17

In reply, NVIDIA asserts *inter alia* that (1) a scheduling agreement does not affect NVIDIA's substantive right to seek relief in response to Rambus's deficient disclosure; and (2) NVIDIA cannot provide infringement-related discovery until Rambus complies with Patent L.R. 3-1 (b).

"Until [a] plaintiff meets the burden of providing infringement contentions compliant with Patent L.R. 3-1, the Court will not order defendant to proceed with discovery." *Bender*, 2010 WL 1135762 at *2. "The Court may modify the obligations or deadlines set forth in these Patent Local Rules based on the circumstances of any particular case, including, without limitation, the simplicity or complexity of the case as shown by the patents, claims, products, or parties involved." Patent L.R. 1-3. "Such modifications shall, in most cases, be made at the initial case management conference, but may be made at other times upon a showing of good cause."

Given Rambus's failure to comply with Patent L.R. 3-1, a stay of infringement-related discovery is appropriate. Rambus's arguments to the contrary are unpersuasive. Neither the parties' March 21, 2011 stipulation nor the Court's June 24, 2011 Order amount to a waiver of NVIDIA's right to seek relief in the event of Rambus's failure to comply with Patent L.R. 3-1. The initial stipulation was entered into prior to Rambus's filing of its Disclosure, and no reference was made in the stipulation regarding what could happen in the event that Rambus failed to comply with its obligations under Patent L.R. 3-1. Likewise, based upon the record presented, Rambus's compliance with Patent L.R. 3-1 and NVIDIA's request for a stay were not addressed by the Court during the June 24, 2011 case management conference.

**F.  Conclusion Re Motion to Compel Disclosures/Request for Stay**

Consistent with the foregoing, Rambus's Disclosure does not comply with Patent L.R. 3-1(b), (c), (d) and (f). Accordingly, NVIDIA's motion for an order compelling Rambus to provide an Amended Disclosure of Asserted Claims and Infringement Contentions that comply with Patent L.R. 3-1 and 3-2 is GRANTED. Plaintiff shall file an Amended Disclosure of Asserted Claims and Infringement Contentions consistent with this Order by no later than September 9, 2011. NVIDIA's request for stay of infringement-related discovery is GRANTED. All infringement-related discovery is stayed until five days after Rambus's filing of its Amended Disclosure.

Case 2:13-cv-00017-RWS-RSP Document 241 Filed 02/14/13 Page 81 of 142 PageID #:
Case3:08-cv-05343-SI Document 241 Filed 08/24/11 Page 19 of 23
307

## II.    Motion to Compel Further Responses to Interrogatories 1, 4, 10 and 11

Rambus moves to compel further responses to interrogatory 1, 4, 10 and 11.  The interrogatories provide as follows:

1.      Describe in detail each NVIDIA Accused Product manufactured, used, sold, offered for sale, or imported by NVIDIA since January 1, 2000, including by Identifying each such Accused Product's NVIDIA product name, part number, model number, version number, all internal names and designations (including marketing designations), what type of memory is supported by the product, and the Date of Sale (where Date of Sale shall include the date each such product was first offered for sale, released for sale and, if no longer sold, removed from sale).

4.      Identify each memory device employed in the Accused Products or used in conjunction with the Accused Products, including an Identification of all suppliers/manufacturers of each memory device.

10.     From January 1, 2000 to the present, on a monthly and yearly basis (if any information cannot be segregated by month, then the smallest time frame possible), state separately for each Accused Product, the unit volume sales, average selling price, total cost of products sold, average costs of products sold, amount of gross revenue, net revenue, gross profit, and net profit derived by NVIDIA from the sales of the Accused Products. State in Your response the method by which the revenue, sales, and profit figures were computed and include a description of each cost used to determine the net revenue and net profit. Include in Your response the Identity, by Bates number, of each document that supports Your answer or to which You referred in preparing Your answer and the names of any individuals who assisted in preparing Your answer.

11.     From January 1, 2000 to the present, on a monthly and yearly basis (if any information cannot be segregated by month, then the smallest time frame possible), state separately for each Accused Product (including components of Accused Products), the number of Accused Products made, assembled, sold or offered for sale (including by total unit volume and sales), including specific indication separately for each Accused Product as to the number of Accused Products including by total unit volume and sales) made, assembled, or tested in the United States and sold or offered for sale abroad, and the number of Accused Products made or assembled abroad and imported into, sold, or offered for sale in the United States. For each Accused Product that is not made, assembled, imported into, sold, or offered for sale within the United States, state (by name and model/part number, including marketing designations), where the product was manufactured, the entity that manufactures the product, entities to which the product was sold and where the sales took place, the method by which You determined where the sale took place, and for products that contain components other than Accused Products, where and to what entity the Accused Product was manufactured and sold, respectively.

Rambus asserts that it has a made a number of concessions that eliminate most of NVIDIA's objections; that the damages information sought by the interrogatories at issue is a

19

Case 2:13-cv-00017-RWS-RSP Document 8241 Filed 02/14/13 Page 82 of 142 PageID #:
Case3:08-cv-05343-SI Document241 Filed03/24/11 Page20 of 23
308

high priority in this action; and that NVIDIA's remaining objections to the interrogatories are unavailing.

NVIDIA's remaining objections to the interrogatories are that: (1) the interrogatories are premature due to Rambus's failure to disclose NVIDIA's Accused Products sufficiently and with proper specificity in Disclosure; and (2) due to the inclusion of subparts, the interrogatories exceed the total number of interrogatories (40) that Rambus may propound in this case. NVIDIA asks the Special Master to consider Rambus's entire first set of 16 interrogatories in considering its "excessive" objection.

Each of the interrogatories at issue in this motion seek information related to NVIDIA's "Accused Products." As set forth above, Rambus's Disclosure does not clearly set forth NVIDIA's "Accused Products," and for this and other reasons does not comply with Patent L.R. 3-1. Rambus's failure to comply with Patent L.R. 3-1 warrants a brief stay on infringement-related discovery. Interrogatories 1 and 4 seek infringement-related discovery. While interrogatories 10 and 11 generally seek damages information, the inclusion of the term "Accused Products" in the interrogatories renders the interrogatories infringement-related, and thus subject to the temporary stay.

Even assuming for a moment that the interrogatories were not subject to the stay of infringement-related discovery, NVIDIA's use of subparts renders the interrogatories improper. "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed.R.Civ.P. 33(a)(1). On March 21, 2011, the parties also agreed that each party "may propound up to 40 written interrogatories, including all discreet subparts, allocated between these consolidated cases at the propounding party's sole discretion." "The aim [of the numerical limit] is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device." *Safeco of America v. Rawstron,* 181 F.R.D. 441, 443 (C.D. Cal. 1998)(citation omitted). "Although Rule 33(a) states that "discrete subparts" should be counted as separate interrogatories, it does not define that term." *Id.* "[I]t would appear that an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question." 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2168.1, at 261 (2d ed. 1994). "On the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than

one for purposes of the limitation." *Id.* A number of cases have construed the term "discrete subparts" as meaning that "interrogatory subparts are to be counted as one interrogatory ... if they are logically or factually subsumed within and necessarily related to the primary question." *Safeco of America*, 181 F.R.D. at 445.

Fourteen of the sixteen interrogatories included in Rambus's first set of interrogatories ask about either all the Accused Products, which are apparently number more than 300, or all the patents in suit (15). Meet and confer discussions limited the patents at issue for purposes of the interrogatories to the 10 patents included in Rambus's infringement contentions. An interrogatory that seeks information (even a single piece of information) about 300 separate products is asking 300 separate questions. Absent some sort of agreement between the parties regarding such questions, any such question exceeds the parties agreed upon interrogatories limit. Two of the interrogatories ask about both the accused products and the patents included in the infringement contentions (interrogatories 13 and 15). Even assuming for a moment that a single interrogatory could permissibly ask for information about all 300 accused products, Rambus's interrogatories that do so also ask about multiple distinct subjects (i.e., distinct subparts) regarding each product. *See* e.g., interrogatory 11, above. In short, Rambus has asked NVIDIA to respond to well in excess of 40 interrogatories. Accordingly, Rambus's first set of interrogatories improperly circumvent the limit of 40 interrogatories for each side.

Rambus's motion to compel further responses to interrogatories 1, 4, 10 and 11 is DENIED. The parties shall meet and confer regarding the agreed-upon interrogatories limit and an agreement with respect to subpart objections (given the number of products and patents at issue) prior to propounding any additional interrogatories.

IT IS SO ORDERED.

Dated: August 24, 2011

Edward A. Infante
Special Master

21

Case 2:13-cv-00017-RWS-RSP Document 241 Filed 02/14/13 Page 84 of 142 PageID #:
Case3:08-cv-05343-SI Document 241 Filed 08/24/11 Page 22 of 23
310

## PROOF OF SERVICE BY E-Mail

Re: Rambus, Inc. vs. Nvidia Corporation
Reference No. 1100058440

I, Sandra Chan, not a party to the within action, hereby declare that on August 24, 2011 served

the attached ORDER GRANTING NVIDIA'S MOTION TO COMPEL DISCLOSURES PURSUANT TO

PATENT L.R. 3-1 AND 3-2 AND FOR STAY, AND DENYING RAMBUS'S MOTION TO COMPEL

FURTHER RESPONSES TO INTERROGATORIES on the parties in the within action by electronic mail at

San Francisco, CALIFORNIA, addressed as follows:

Mike McKool Jr. Esq.
McKool Smith
300 Crescent Ct.
Suite 1500
Dallas, TX  75201
Tel: 214-978-4002
Email: mmckool@mckoolsmith.com

Pierre J. Hubert Esq.
McKool Smith
300 W. 6th St.
Suite 1700
Austin, TX  78701
Tel: 512.692.8700
Email: phubert@mckoolsmith.com

Trent E. Campione Esq.
McKool Smith
300 W. 6th St.
Suite 1700
Austin, TX  78701
Tel: 512.692.8718
Email: tcampione@mckoolsmith.com

David M. Goldstein Esq.
Orrick, Herrington & Sutcliffe LLP
405 Howard St.
The Orrick Building
San Francisco, CA  94105
Tel: 415-773-4255
Email: dgoldstein@orrick.com

Theresa A. Sutton Esq.
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Rd.
Menlo Park, CA  94025
Tel: 650-614-7307
Email: tsutton@orrick.com

Stacey E. Stillman Esq.
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Rd.
Menlo Park, CA  94025
Tel: 650-614-7400
Email: sstillman@orrick.com

I. Neel Chatterjee Esq.
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Rd.
Menlo Park, CA  94025
Tel: 650-614-7356
Email: nchatterjee@orrick.com

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco, CALIFORNIA on August 24, 2011.

Sandra Chan
JAMS The Resolution Experts
schan@jamsasdr.com

# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ORION IP, LLC | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| vs. | § | CASE NO. 2:04-CV-297 |
| | § | |
| STAPLES, INC., ET AL. | § | |
| | § | |
| **Defendants** | § | |

## ORDER

For the reasons set forth below, the Court **DENIES** Defendants' collective Motion to Compel Answers to Interrogatory Nos. 6 and 7 (Docket No. 133), **GRANTS** Defendant Toyota Motor Sales, U.S.A., Inc.'s ("TMS" or "Toyota") Motion to Enforce Plaintiff Orion IP, LLC's ("Plaintiff" or "Orion") Compliance with Patent Rule 3-7 (Docket No. 144), and **DENIES** Plaintiffs' Cross Motion to Compel Toyota's Compliance with Disclosure and Discovery Requirements (Docket No. 152).

*Motion to Compel Answers to Interrogatory Nos. 6 and 7*

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, Defendants collectively move the Court to compel Plaintiff to answer Interrogatory Nos. 6 and 7. These two interrogatories request information concerning Plaintiff's validity contentions. However, these two interrogatories require Plaintiff to individually analyze approximately fifty pieces of prior art and compile approximately fifty separate answers. While Defendants may seek, in separate interrogatories, specific responses regarding specific pieces of prior art, or may seek, in a single interrogatory, a general response regarding all identified prior art, Defendants may not seek, in a single interrogatory, specific responses for every piece of prior art. Such an interrogatory would burden the Plaintiff and

dramatically expand the number of interrogatories.

Plaintiff has already provided a general response to Defendants' invalidity contentions and presumably will provide specific responses to Defendants' invalidity contentions in their expert reports.  If this general response is inadequate, the Court expects Defendants to clarify the interrogatories at issue and for the parties to negotiate an acceptable response to the interrogatories, in light of the above guidelines. The Court therefore **DENIES** the Motion to Compel Answers to Interrogatory Nos. 6 and 7.

*Motion to Enforce Compliance with Patent Rule 3-7*

On January 28, 2005, Plaintiff served its Preliminary Infringement Contentions ("PICs") on Toyota, contending that "[t]he claimed methods are practiced in, for example, the Defendant's various websites (for example, www.toyota-parts.com, www.toyota.com, www.scion.com) retail kiosks and other systems that operate in the same or similar fashion."  To support its contentions, Plaintiff attached two series of computer screen-shots, mapping the accused infringing "model selector" features on www.toyota-parts.com and www.toyota.com.  Plaintiff provided no other examples of accused infringing instrumentalities.  However, on information and belief, Plaintiff accused Toyota's "Dealer Daily" system of infringement.

In reliance on Plaintiff's PICs, Toyota provided on March 14 its Preliminary Invalidity contentions, exchanged on March 29 its list of claim terms to be construed, exchanged on April 21 its proposed construction of claim terms with extrinsic evidence in support thereof, and contributed to and filed on May 20 the Joint Claim Construction Statement.  On May 27, one week after the parties filed their Joint Claim Construction Statement, Plaintiff amended its PICs, charting alleged

infringing pathways on Scion kiosks and Lexus's website. These amended PICs were served without seeking leave of the Court. Toyota asserts that because they relied on Plaintiff's original PICs in preparing for the *Markman* hearing, scheduled for August, and in planning for trial, scheduled for April, they will be prejudiced if Plaintiff is allowed to now amend its PICs to add new theories of infringement. Plaintiff asserts that they amended their PICs to resolve a discovery dispute with Toyota. According to Plaintiff, Toyota refused to disclose documents relating to the Scion and Lexus websites since Plaintiff failed to specifically accuse any methods on those websites of infringement. To remedy this dispute, Plaintiff amended their infringement contentions to now include the Scion and Lexus websites.

Patent Rule 3-7 states that "[a]mendment or modification of the Preliminary or Final Infringement Contentions . . . may be made only by order of the Court, which shall be entered only upon a showing of good cause."[1]   Plaintiff has not shown good cause for amending its PICs. When information is publicly available, the Patent Rules require a plaintiff to set forth specific theories of infringement at the outset of the case. *See American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005)(Davis, J.). The amended PICs in the present case are based on information publicly available on the Lexus and Scion websites and kiosks that Plaintiff failed to take advantage of when making its initial disclosures. Despite making broad infringement accusations against Toyota's entire family of websites, Plaintiff provided specific accusations of infringement for only the model selector features on www.toyota.com and www.toyota-parts.com. Toyota was left to guess what Plaintiff was targeting on the Scion and Lexus websites and understandably balked when Plaintiff sought discovery relating to those websites. Although the

---

[1]The Patent Rules can be found on the Eastern District's website at www.txed.uscourts.gov.

Court adheres to a policy of broad discovery, the scope of discovery is defined by the initial disclosures made in a plaintiff's PICs. *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755-56 (E.D. Tex. 2004)(Davis, J.). That scope cannot be widened during the course of discovery by amending PICs to include theories that should have disclosed initially. Allowing such an amendment would be contrary to the purpose of the Patent Rules and prejudicial to defendants, who must rely on the specific positions articulated in PICs to build their case. Because Plaintiff has added theories that should have been disclosed initially, and because Toyota would be prejudiced by allowing Plaintiff to add new theories at such an advanced stage in the case, the Court **GRANTS** the motion and strikes Plaintiff's amended PICs with prejudice.

*Cross Motion to Compel Toyota's Compliance with Disclosure and Discovery Requirements*

In light of the Court striking Plaintiff's amended PICs and in light the parties' representations to the Court, the Court **DENIES** this cross motion as moot. Plaintiff's amended PICs relating to the Scion kiosks and website and to the Lexus website have been struck by the Court. Toyota has offered to provide broad discovery relating to www.toyota.com and has declared that it is not affiliated with www.toyota-parts.com. Toyota has provided Plaintiff with the opportunity to inspect the Dealer Daily system. The Court therefore concludes that any discovery disputes relating to these topics can be resolved by the parties and are therefore moot. With regards to Plaintiff's request for computer code, Plaintiff previously represented to the Court that computer code is not relevant to this case. Thus, sweeping code requests are unnecessary. However, if the parties now discover that some specific code is relevant, the Court expects that specific code to be produced.

So ORDERED and SIGNED this 7th day of July, 2005.

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# Exhibit H

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES--GENERAL

Case No. CV 08-3088-PA(RCx)          Date: February 18, 2009

Title:  Superior Communications, a California corporation v.
        Earhugger, Inc., a Utah corporation
=================================================================
DOCKET ENTRY


=================================================================
HON. ROSALYN M. CHAPMAN, UNITED STATES MAGISTRATE JUDGE

Jake Yerke                  None             C/S 2/18/09
Deputy Clerk                Court Reporter      Tape No.


ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANT:
Patrick F. Bright                  Todd E. Zenger


PROCEEDINGS:  ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION
     TO COMPEL INTERROGATORY RESPONSES AND GRANTING, IN PART,
     PLAINTIFF'S MOTION TO COMPEL DOCUMENT REQUESTS


     On January 28, 2009, plaintiff filed a notice of motion and
motion to compel discovery, a joint stipulation, and the
supporting declaration of Patrick F. Bright.[1]  Neither party has
filed a supplemental memorandum.  Oral argument was held on
February 18, 2009, before Magistrate Judge Rosalyn M. Chapman.


//

//

---

     [1]  In his declaration, Mr. Bright "ask[s] this Court to
award appropriate issue preclusion and monetary sanctions to
Plaintiff, in addition to an order directing Defendant . . . to
produce the long-overdue discovery within 5 calendar days after
the entry of such an order."  Declaration of Patrick F. Bright
("Bright Decl.") ¶ 3.  However, plaintiff's notice of motion does
not state plaintiff seeks these sanctions, and the joint
stipulation does not address these sanctions; thus, the Court
does not consider these requests, which are improperly set forth
solely in counsel's declaration.

**BACKGROUND**

On May 12, 2008, plaintiff Superior Communications, a California corporation, filed a complaint against defendant Earhugger, Inc., a Utah corporation, for infringement of U.S. Patent 5,847,545 ("the patent"), alleging defendant violated the patent "by selling, and offering to [sell] . . . battery chargers, e.g., the PowerPOD charger, that infringe the '545 patent." Complaint ¶ 1. Plaintiff seeks declaratory and injunctive relief and actual damages, among other things. On August 20, 2008, defendant filed an answer and raised several affirmative defenses, including equitable defenses and defenses that the patent is invalid and has not been infringed.

On January 20, 2009, plaintiff filed its Disclosures of Asserted Claims and Infringement Contentions alleging defendant's "PowerPOD battery chargers ("the Accused Products") infringe Claims 1-7 [of the patent], as shown in the attached claim charts." Plaintiff further contends "[o]ne such [infringing] product, on information and belief, is the EH Power Pod Charger."

**I**

Local Rule 37-2.2 provides, in part,

. . . After the opposing party's papers are added to the stipulation by the moving party's counsel, the stipulation shall be provided to opposing counsel, who shall sign it (electronically or otherwise) and return it to counsel for the moving party, no later than the end of the next business day, so that it can be filed with the notice of motion.

Local Rule 37-2.2.

Here, Mr. Bright states that on January 23, 2009, he "added to the motion the inserts that Mr. Zenger [defendant's counsel] provided to [him], and returned the motion as here filed to [Mr. Zenger] for final review and signing. [However, Mr. Zenger] has not responded to my emails and phone calls since January 23, 2009. I emailed him today [January 28, 2009] that I would be filing this motion without his signature if I heard nothing from him. I have heard nothing from him." Bright Decl. ¶ 2. Nothing in Rule 37-2.2 provides counsel the option of refusing to comply with its requirements. This is deliberate on the district

court's part, since leaving counsel the discretion to determine whether to comply with Local Rule 37 would undermine the purpose of that rule, which is to assist the Court in addressing discovery disputes.  Here, Mr. Zenger failed to comply with Local Rule 37-2.2, and did not sign the joint stipulation;[2] accordingly, this Court is considering sanctioning Mr. Zenger in the amount of $500.00 under Local Rule 37-4, as set forth in the Order.

**II**

Under the federal rules, discovery is permitted in civil actions of "any nonprivileged matter that is relevant to any party's claim or defense. . . ."  Fed. R. Civ. P. 26(b)(1); see Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005) ("Relevant information for purposes of discovery is information 'reasonably calculated to lead to the discovery of admissible evidence.'").  "'Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.'"  Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005) (quoting Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998)).  The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections.  Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975); Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 104 (D. N.J. 1990).

The dispute before the Court focuses on ten interrogatories and 75 document requests plaintiff served on defendant.  Rule 33 of the Federal Rules of Civil Procedure provides for the serving by a party upon any other party of written interrogatories that relate to any matters which can be inquired into under Rule 26(b).  Fed. R. Civ. P. 33(a)(2).  Rule 34 provides for the serving by a party upon any other party of written requests for the responding party "to produce and permit the requesting party . . . to inspect . . . [and] copy . . . any designated documents or electronically stored information" that is "in the responding

---

[2]  At oral argument, Mr. Zenger stated he authorized Mr. Bright to sign the joint stipulation on his behalf since he was on vacation.  However, Mr. Bright stated this is not true.  Thus, Mr. Zenger should file a declaration under oath if he does not want to be sanctioned, as set forth in the Order.

party's possession, custody or control." Fed. R. Civ. P. 34(a)(1)(A).[3]  The responding party has an obligation to conduct a reasonably inquiry into the factual basis of its responses to the request to produce documents.  National Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 554-56 (N.D. Cal. 1987). "Rules 33 and 34 are cumulative, not alternative."  United States v. National Steel Corp., 26 F.R.D. 603, 606 (S.D. Tex. 1960); Harvey v. Levine, 25 F.R.D. 15, 17 (N.D. Oh. 1960).

As an initial matter, defendant contends plaintiff's interrogatories do not comply with Rule 33(a) because they exceed 25 in number.  Rule 33(a) provides that:

> [u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts.  Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b)(2).

Fed. R. Civ. P. 33(a).  "Although the term 'discrete subparts' does not have a precise meaning, courts generally agree that 'interrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed within and necessarily related to the primary question.'"  Trevino v. ACB Am., Inc., 232 F.R.D. 612, 614 (N.D. Cal. 2006) (citations omitted); Safeco of Am. v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998); see also Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 664-65 (D. Kan. 2004) ("[A]n interrogatory containing subparts directed at eliciting details concerning a 'common theme' should generally be considered a single question.").

---

[3]  "[F]ederal courts have consistently held that documents are deemed to be within [a party's] 'possession, custody or control' for purposes of Rule 34 if the party has *actual* possession, custody, or control, or has the legal right to obtain the documents on demand."  In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995), cert. dismissed, 517 U.S. 1205 (1996); see also United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989) ("Control is defined as the legal right to obtain documents upon demand.").

4

Defendant claims:  Interrogatory nos. 1, 2,[4] 4, 6 and 10
each have at least three distinct parts and subparts;
Interrogatory no. 3 has at least six distinct parts and subparts;
Interrogatory nos. 5 and 9 each have at least two distinct parts
and subparts; and Interrogatory nos. 7 and 8 each have at least
seven distinct parts and subparts.  Applying the rationale of the
cited cases, the Court finds that each of plaintiff's
interrogatories has more than one logically or factually-related
theme; thus, the Court determines plaintiff has asked
substantially more than 25 interrogatories.[5]  A classic example
of plaintiff's approach is Interrogatory no. 1, which asks:

> State all of the facts that support or undermine the
> allegation in YOUR answer to the Complaint.  Identify
> all PERSONS who have knowledge of these facts.
> Identify all DOCUMENTS and things that RELATE or refer
> to those facts.

Jt. Stip. at 5:27-6:2.  Even if the Court were to overlook that
this single interrogatory requires defendant, among other things,
to set forth all facts regarding each of the affirmative defenses
upon which defendant relies, and the additional difficulty
defendant would have in coherently responding to this request
given that plaintiff's complaint does not identify which claims
of the patent-in-suit defendant's products allegedly infringe or
which of defendant's products allegedly infringe the patent-in-
suit, Interrogatory no. 1 still has at least three discrete
subparts: facts; persons; and documents.  Safeco of Am., 181
F.R.D. at 445-48; see also U.S. ex rel. Pogue v. Diabetes
Treatment Centers of Am., Inc., 235 F.R.D. 521, 527 (D. D.C.
2006) (Interrogatory seeking "all facts supporting Relator's
contention that [defendant] was aware of the illegal conduct of
the medical directors. . . ; asks Relator to identify each person
who knew, and to explain how they knew, of the violations [and]
requests that Relator identify all documents that support the

---

[4]  The Court finds Interrogatory no. 2 does not seek
relevant information, as plaintiff candidly admits.  Thus,
plaintiff's request to compel a response to Interrogatory no. 2
**is denied**.

[5]  Plaintiff merely argues that it has **not** asked more than
25 interrogatories, and does **not** request the Court allow it to
ask more than 25 interrogatories.

contention as to each medical director" is "more accurately counted as three separate interrogatories."); <u>Trevino</u>, 232 F.R.D. at 614 (Interrogatory asking defendant to "[i]dentify each person whom you expect to call as an expert witness at trial, state the subject matter on which the expert is expected to testify and the substance of the facts and opinions to which the expert is expected to testify, and provide a summary of the grounds for each opinion and the expert's qualifications" constitutes "three separate interrogatories."); <u>Banks v. Office of the Senate Sergeant-At-Arms</u>, 222 F.R.D. 7, 10 (D. D.C. 2004) (An "obvious example" of a discrete subpart "is the combining in a single interrogatory of a demand for information and a demand for the documents that pertain to that event.  Clearly, these are two distinct demands because knowing that an event occurred is entirely different from learning about the documents that evidence it occurred.  Thus, a demand for information about a certain event and for the documents about it should be counted as two separate interrogatories.").

Since granting plaintiff's motion to compel responses to the interrogatories, even in part, would exceed 25 interrogatories, the Court will deny without prejudice plaintiff's motion to compel responses to Interrogatory nos. 1 and 3 through 10, and afford plaintiff the opportunity to prioritize its inquiries and determine which interrogatories to again submit to defendant.[6] <u>Safeco of Am.</u>, 181 F.R.D. at 448; <u>Banks</u>, 222 F.R.D. at 11; <u>see also Williams v. Bd. of County Comm'rs of the Unified Gov't of Wyandotte County and Kansas City, Kansas</u>, 192 F.R.D. 698, 702 (D. Kan. 2000) (Since "the Court finds defendant The Board of County Commissioners has exceeded the maximum number of interrogatories allowed to be served by each party . . . , the Court concludes Plaintiff should not be required to answer the interrogatories as propounded.").

The plaintiff also seeks to compel documents responsive to Request nos. 1-75.[7]  To address these voluminous document requests in a reasonable manner, the Court groups these requests into the following four broad categories (as plaintiff should

---

[6]   The Court, thus, does not address defendant's other objections, which would not afford plaintiff any greater relief than granted herein.

[7]   Request no. 19 is not included in the joint stipulation.

have done): (1) documents related to defendant's answer and affirmative defenses (Request nos. 1-6, 11-15 and 38-39); (2) documents related to plaintiff's first set of interrogatories to defendant (Request nos. 7 and 16); (3) documents related to the patent-in-suit, defendant's patents, and/or Power POD battery charger(s) (Request nos. 17-18, 20-29,[8] 35, 37, 40-41, 43-44, 48, 55-56, and 58-75[9]); and (4) documents related to the sales of Power POD battery charger(s), defendant's finances, and damages (Request nos. 8-10, 30-34, 36, 42, 45-47, 49-54 and 57).

Defendant makes numerous boilerplate objections to the document requests, including that the requests: invade protected attorney-client privilege and work-product protection; are vague and unduly burdensome; are "premature" since defendant has not received discovery from plaintiff; and the "answer[s] may be as readily ascertained by [plaintiff] as by [defendant] by an inspection of documents. . . ." Further, defendant offers to make available to plaintiff "all nonprivileged documents within the scope of [the] document request[s], if any, in Utah at a mutually agreeable location and time."

As an initial matter, none of defendant's objections to category (1) document requests (Request nos. 1-6, 11-15 and 38-39) are well-taken since these requests seek only documents supporting defendant's answer and affirmative defenses, and such document requests complement Rule 33(a)(2), which allows a party to propound contention interrogatories. Cf. Cable & Computer Technology, Inc. v. Lockheed Sanders, Inc., 175 F.R.D. 646, 650 (C.D. Cal. 1997); Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684 (D. Kan. 1991). Thus, plaintiff's motion to compel responses to the category (1) document requests should be **granted**.

The same cannot be said, however, for the category (2), (3) and (4) document requests. With regard to category (2), since the Court has previously denied without prejudice plaintiff's

---

[8] Request nos. 20 and 22 are identical and Request nos. 21 and 23 are identical.

[9] Request nos. 62-64 seek information about defendant's experts and their evidence. Since Judge Anderson has not set a separate discovery period for expert discovery, the Court finds these document requests are not premature.

motion to compel responses to plaintiff's interrogatories, the
Court also **denies** plaintiff's motion to compel documents
responsive to Request nos. 7 and 16, which refer to defendant's
responses to the interrogatories.  As for categories (3) and (4),
although boilerplate objections are generally improper, and the
Court disapproves of them, <u>Paulson v. Case Corp.</u>, 168 F.R.D. 285,
289 (C.D. Cal. 1996); <u>see also</u> <u>McLeod, Alexander, Powel & Apffel,</u>
<u>P.C. v. Quarles</u>, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections
that document requests were overly broad, burdensome, oppressive,
and irrelevant were insufficient to meet party's burden to
explain why discovery requests were objectionable); <u>Panola Land</u>
<u>Buyers Ass'n v. Shuman</u>, 762 F.2d 1550, 1559 (11th Cir. 1985)
(conclusory recitations of expense and burdensomeness are not
sufficiently specific to demonstrate why discovery is
objectionable); <u>Burns v. Imagine Films Entertainment, Inc.</u>, 164
F.R.D. 589, 592-93 (W.D. N.Y. 1996) (general objections that
discovery request was overbroad, vague and unduly burdensome were
not sufficiently specific to allow court to ascertain
objectionable character of discovery request and were improper),
some of defendant's boilerplate "vague and unduly burdensome"
objections to category (3) and (4) document requests have merit.
Here, many of plaintiff's category (3) and (4) document requests
seek information about **all** of defendant's products -- not just
the "Accused Products" or the Power POD battery charger(s);[10]
thus, the category (3) and (4) document requests are vague and
unduly burdensome and must be limited to the "Accused Products"
or the Power POD battery charger(s).  <u>See</u>, e.g., Request nos. 9-
10, 27-36, 40, 42-45, 48-59, 71 and 74-75.  Even with this
limitation, however, Request nos. 17-18, 40-41, 44, 53-54 and 72-
73 must be denied as being vague and unduly burdensome, and the
Court **denies** plaintiff's motion to compel these requests.

Moreover, it is clear to the Court that some of the
documents responsive to plaintiff's category (3) and (4) document
requests may be protected by the attorney-client privilege or the
work-product doctrine.  For example, Request no. 61 seeks "ALL
DOCUMENTS RELATED TO communications between [defendant's]
counsel, and anyone other than [defendant], regarding this
litigation."  Similarly, Request no. 66 seeks: "All DOCUMENTS
that refer or RELATE TO the validity or invalidity of any of the

---

[10]  Unfortunately, the joint stipulation is woefully lacking
in pertinent information, such as whether defendant produces or
sells products other than the "Accused Products."

claims of the patent-in-suit." Clearly, a response to these requests may include documents protected by the attorney-client privilege or work-product protection or both. However, the Court does not know whether defendant has provided a privilege log to plaintiff. If not, defendant must provide plaintiff with a privilege log setting forth the documents defendant is withholding from production on attorney-client privilege and work product grounds.[11]

Finally, it is not clear to the Court whether plaintiff is challenging defendant's offer to make documents available for inspection in Utah and claiming defendant must copy and produce the responsive documents to plaintiff in California. Defendant's portion of the joint stipulation discusses this issue extensively, but plaintiff's does not, other than conclusorily asserting the offer is "illusory." Rule 34 requires that document requests "must specify a reasonable time, place, and manner for the inspection and for performance of the related acts." Fed. R. Civ. P. 34(b)(1)(B). Here, plaintiff has not provided the Court with a copy of its document requests, and the Court does not know whether plaintiff designated a different place for production of the requested documents than defendant offers, and neither party has provided the Court with any evidence regarding the respective burdens on the parties for document production. For the parties' guidance, the Court notes "the general rule [is] that business records should be examined at the place where they are kept, at least where the documents requested are large in number and their production poses some inconvenience." Petruska v. Johns-Manville, 83 F.R.D. 32, 36 (D. Pa. 1979); see also Mid-America Facilities, Inc. v. Argonaut Ins. Co., 78 F.R.D. 497, 499 (E.D. Wis. 1978) (Defendant, a California corporation plaintiffs sued in Wisconsin, met the requirements of

---

[11]   The Court finds Model Form 11:A, set forth in The Rutter Group Practice Guide, Federal Civil Procedure Before Trial, correctly and adequately lists all the information that should be on the privilege log, including the title or position of the author and recipient of the document. See In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992); Dole v. Milonas, 889 F.2d 885, 888 n.3 (9th Cir. 1989). In addition to the information on Model Form 11:A, the Court will require the Bates number of the document be placed in parenthesis next to the log number. This should assist plaintiff in determining whether a document has been withheld without proper reason.

Rule 34 when it offered to make documents available to plaintiffs in California "unless plaintiffs can show that the burden imposed on them in going to California will substantially outweigh the burden of the defendant in bringing the documents to Milwaukee[.]"); <u>Betts v. Agri-Tech Serv., Inc.</u>, 1990 WL 5731, *1 (D. Kan.) ("Business records should usually be examined at the place where they are kept and at reasonable hours.").  Since plaintiff, as movant, has not met its burden to show it designated a location other than Utah, or that going to Utah to examine defendant's documents would place a substantial burden on plaintiff, defendant may have plaintiff inspect its documents in Utah.

For all these reasons, plaintiff's motion to compel documents responsive to document Request nos. 1-75 **IS GRANTED, IN PART, AND DENIED, IN PART**.  Specifically, the Court **GRANTS** the motion to compel documents responsive to Request nos. 1-6, 8-15, 20-21, 24-39, 42-43, 45-52, 55-71 and 74-75, and **DENIES** plaintiff's motion as to Request nos. 7, 16-18, 22-23, 40-41, 44, 53-54 and 72-73.

## ORDER

1.  Defendant's counsel **IS ORDERED** to Show Cause why he should not be sanctioned in the amount of $500.00 for having violated Local Rule 37-2.2.  If defendant's counsel objects, he shall file objections, no later than March 2, 2009, and the matter will then be set for hearing on March 12, 2009, at 9:00 a.m. in Courtroom 23.

2.  Plaintiff's motion to compel further responses to Interrogatory nos. 1 and 3-10 **IS DENIED WITHOUT PREJUDICE**, and plaintiff's motion to compel a response to Interrogatory no. 2 **IS DENIED** with prejudice.

3.  Plaintiff's motion to compel further responses to Request nos. 1-75 **IS GRANTED, IN PART, AND DENIED, IN PART**. Defendant shall produce to plaintiff all documents responsive to Request nos. 1-6, 8-15, 20-21, 24-39, 42-43, 45-52, 55-71 and 74-75, no later than twenty (20) days from the date of this Order. In the event documents responsive to these requests are privileged, defendant shall provide a privilege log to plaintiff that complies with the requirements of footnote 10, no later than thirty (30) days from the date of this Order.  Plaintiff's motion to compel documents responsive to Request nos. 7, 16-18, 22-23, 40-41, 44, 53-54 and 72-73 **IS DENIED.**

_____:___25__

case083\08-3088.1
2/17/09                                   Initials of Deputy Clerk_JY

# Exhibit I

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

PATENT COMPLIANCE GROUP, INC.,   )
                                 )
          Plaintiff,             )
                                 )
vs.                              )            No. 10-2442 MaV
                                 )
HUNTER FAN COMPANY,              )
                                 )
          Defendant.             )

---

ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL

---

Before the court is the November 29, 2010 motion of the plaintiff, Patent Compliance Group, Inc. ("PCG"), pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel the defendant, Hunter Fan Company ("Hunter"), to provide full and complete answers to PCG's first set of interrogatories. Hunter filed a response in opposition. The motion was referred to the United States Magistrate Judge for determination. For the reasons that follow, the motion is granted in part and denied in part.

I. PROCEDURAL AND FACTUAL BACKGROUND

This is an action for false patent marking under 35 U.S.C. § 292(a). In its complaint, PCG alleges that Hunter violated the false marking statute by marking, with intent to deceive the public, nine of its thermostat products with one or more of ten expired patents, (Compl. ¶¶ 25-36, 56-61), and by marking, with intent to deceive the public, two thermostat products with three

patents which products were not covered by the scope of the three patents, (Compl. ¶¶ 41-55, 62-66). In its complaint, PCG lists the nine thermostat products and ten patents at issue:

*Heat/Cool* Thermostat (Model No. 40135) - '382 patent;

Electronic Thermostat (Model No. 40135) - '358, '382, and '851 patents;

Electronic Thermostat (Model No. 40170) - '358, '382, and '851 patents;

*Just Right* Thermostat (Model No. 42999) - '382 patent;

*Set & Save* Thermostat (Model No. 44110) - '745, '910, '392, '686, '358, '382, '973, '851, '267, and '875 patents;

*Set & Save* Thermostat (Model No. 44260) - '382 patent;

*Set & Save* Thermostat (Model No. 44360) - '745, '910, '392, '686, '358, '382, '973, '851, '267, and '875 patents;

*Auto Saver* Thermostat (Model No. 44660) - '358, '382, and '851 patents;

*Easy Saver* Thermostat (Model No. 44860) - '358, '382, and '851 patents.

(Compl. ¶ 36.) PCG is not Hunter's competitor in the fan market. PCG brings this action under the *qui tam* provision of the false marking statute, seeking statutory civil monetary fines and injunctive relief.

On May 3, 2010, PCG served Hunter with its first set of interrogatories. PCG's first set of interrogatories consists of five separately numbered interrogatories. Each interrogatory, with the exception of Interrogatory No. 4, has various subparts:

2

Interrogatory No. 1 has eleven subparts; Interrogatory No. 2 has nine subparts; Interrogatory No. 3 has nine subparts; and Interrogatory No. 5 has six subparts.

On October 15, 2010, Hunter served its responses. Even though the first two interrogatories sought information about all of Hunter's patents and products, Hunter objected to providing information as to other patents and products not at issue in the complaint on the grounds that the interrogatories were overly broad, unduly burdensome, and sought information not relevant to the issues being litigated. Hunter limited its answers to Interrogatories Nos. 1 and 2 to the patents or products at issue listed in the complaint. In addition, Hunter refused to answer part of Interrogatory No. 3 and Interrogatories Nos. 4 and 5 in their entirety on the grounds that PCG had exceeded the permissible number of interrogatories allowed under Rule 33. Hunter claims that PCG's first three interrogatories are actually 29 separate interrogatories.

PCG filed the present motion to compel Hunter to answer Interrogatories Nos. 1 and 2 with respect to all its patents and to provide answers to Interrogatories Nos. 3, 4, and 5.

II.  ANALYSIS

A.  <u>Interrogatories No. 1</u>

Interrogatory No. 1 asks Hunter to:

Identify every patent that Hunter Fan has owned, licensed, or has been assigned. The identification

3

should included the following information separately for each patent:

(i) The patent number;

(ii) The title of the patent;

(iii) The expiration date of the patent;

(iv) The date on which Hunter Fan acquired rights under the patent;

(v) The dates on which Hunter Fan paid any fees, e.g., maintenance fees to the United States Patent office with respect to each patent;

(vi) If the patent is licensed or assigned to Hunter Fan, the sum of money that Hunter Fan has paid to date for rights under the patent;

(vii) The identity of the law firm or law firms who prosecuted the patent;

(viii) Any consideration given to the inventor(s) of the patent in exchange for the patent rights, if assigned to Hunter Fan;

(ix) An identification of all persons involved in acquiring or applying for the patent rights on behalf of Hunter Fan;

(x) Any and all valuations of the patent, either by Hunter Fan or a Third Party; and

(xi) All documents, identified by Bates number, showing or otherwise evidencing (i) through (x) above.

(D.E. No. 46-2, Ex. A at 7.) Hunter objected to Interrogatory No. 1 as irrelevant, overly broad, and unduly burdensome to the extent Interrogatory No. 1 sought information unrelated to the patents and products listed in the complaint. Notwithstanding its objections, Hunter substantively responded to this interrogatory with respect to the patents listed in PCG's complaint, produced certain

4

documents, and referenced the copies of each patent attached as exhibits to PCG's complaint.

Once an objection on relevancy is raised, the party seeking discovery must demonstrate that the requests are relevant to the claims or defense in the pending action. *Allen v. Howmedica Leibinger, GmhH*, 190 F.R.D. 518, 521-22 (W.D. Tenn. 1999) (Vescovo, MJ). PCG insists that the information sought in Interrogatory No. 1 is relevant to PCG's claim that Hunter falsely marked patents with the "intent to deceive." PCG states that it "intends to establish Hunter's 'intent to deceive' by demonstrating Hunter's systematic marking of all of its patents and products." (PCG's Brief in Supp. of Mot. to Compel, D.E. No. 46-1 at 4.) In its response to PCG's interrogatories, Hunter claims that some of the products at issue were falsely marked due to the lack of knowledge of the expiration of the patents by its employee, Erich Schroeder, and his mistaken belief that other patents had expired. (D.E. No. 46-2, Ex. B. at 14.) PCG maintains that in order to test the veracity of this statement, it is entitled to examine all of Hunter's patents and products to see if other expired patents were correctly removed.

Hunter argues that PCG is merely on a fishing expedition. In its response to the motion, Hunter explains that it is a 100-year-old company with over 300 patents and many products including non-thermostat products. (Def.'s Resp. in Opp. to Mot. to Compel, D.E.

No. 48 at 4.) Moreover, Schroeder was only responsible for product packaging for Hunter's thermostat products. (*Id.*)

The court fails to see how the information sought in Interrogatory No. 1 as to all patents ever owned by Hunter during its 100-year history would be relevant to Hunter's intent to deceive in the marking of the packaging for its thermostats in the late 1990s or early 2000s. Because Schroeder was only responsible for thermostat packaging, patents related to non-thermostat products would be useless in evaluating the veracity of Schroeder's claim. PCG has failed to carry its burden to establish the relevancy of all patents Hunter ever owned. In addition, the court finds Interrogatory No. 1 to be overbroad inasmuch as it lacks any temporal limits. PCG will not be allowed discovery concerning patents and products not at issue in the complaint. Accordingly, PCG's motion to compel Hunter to answer Interrogatory No. 1 as to all patents is denied.

B.   <u>Interrogatories No. 2</u>

This interrogatory asks Hunter to:

Separately for every patent that Hunter Fan identifies in response to Interrogatory 1, describe in detail every product, packaging of a product, website, or thing that Hunter Fan has marked or caused to be marked with that patent. The identification should include the following information separately for each product, packaging of a product, website, or thing:

(i)   The name of the marked product, packaging of a product, website, or thing;

(ii) The product number or model number or any other way

6

to identify the product, packaging of a product, website or thing:

(iii) The range of dates in which the product, packaging of a product, website, or thing was marked with the patent;

(iv)  The number or quantity of such products, packagings of a product, websites, or things bearing a mark of the patent;

(v)  Hunter Fan's revenue and profit associated with each products, packagings of a product, websites, or things bearing a mark of the patent over the past 10 years;

(vi) The country in which the product, packaging of a product, website, or thing was manufactured or created;

(vii)  The retail price of the product, packaging of a product, website, or thing;

(viii) An identification of all persons involved in the decision to mark the product, packaging of a product, website, or thing with the patent; and

(ix) All documents, identified by Bates number, showing or otherwise evidencing (i) through (vi) above.

(D.E. No. 46-2, Ex. A at 7-8.)

For the reasons stated above, PCG's motion to compel is also denied as to Interrogatory No. 2.

C.  <u>Permissible Number of Interrogatories</u>

Hunter contends that PCG propounded and served interrogatories that exceed the limit of twenty-five as set forth in Rule 33(a) of the Federal Rules of Civil Procedure.  PCG argues that each subpart is not a separate question subject to the numerical limit because each subpart shares a "common theme" or seeks information closely and logically related to the main interrogatory, and therefore

7

should not be counted separately.

According to Rule 33, a party may not serve more than twenty-five interrogatories on another party, counting "all discrete subparts" of a question, without a court order or a written stipulation by the parties.  FED. R. CIV. P. 33(a).  The Advisory Committee to the Rules stated, "Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects." *Advisory Committee Note*, 1993 Amendments.  The Committee went on to note that as an example, a question could inquire into certain communications and simultaneously inquire into the source, substance, time and place of a communication without making each nuance and detail a separate interrogatory.  *Id.*  Rule 33 has been interpreted to mean that if an interrogatory's subparts are "logically or factually subsumed within and [are] necessarily related to" the primary interrogatory, then the subparts are not separate interrogatories.  *Ginn v. Gemini, Inc.*, 137 F.R.D. 320, 322 (D. Nev. 1991).  In interpreting this standard, the district court in Nevada adopted the reasoning in *Ginn* but also asked, "can the subsequent [subpart] stand alone?  Is it independent of the first question? . . . [D]iscrete or separate questions should be counted as separate interrogatories." *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997).  Furthermore, an interrogatory asking about specific information and an

8

interrogatory asking about the existence and identification of documents relating to that information are separate, independent inquiries.  *See Smith v. Café Asia*, 256 F.R.D. 247, 254 (D.D.C. 2009.)

PCG has served five separately numbered interrogatories.  The first three interrogatories collectively have 29 subparts.  PCG avers that the subparts directly pertain to the subject matter of the primary question and thus should be considered one interrogatory for the purposes of Rule 33.

Hunter insists that the subparts are independent of the primary question, not subsumed, stand alone, and should be counted as separate interrogatories.  For example, Hunter argues, the primary question in Interrogatory No. 1 asks Hunter to "identify" each patent it has ever owned but the subparts seek the expiration dates, the dates on which Hunter paid fees, the dates on which Hunter acquired rights under the patent, and the sum of monies paid by Hunter, among other things.  To answer the subparts, Hunter claims it would have to examine separate records, such as licensing agreements, assignment records, and financial records.

The court has examined the interrogatories at issue and finds that Interrogatories Nos. 1, 2, and 3 all contain discrete subparts as set forth below.  In Interrogatory No. 1, the first two subparts which ask for the patent number and the title of the patent are subsumed in the primary questions which asks for the identification

9

of the patents and will be counted as one question.  The first two subparts seek necessary details in order to properly identify the patents.  The remainder of the subparts in Interrogatory No. 1 seek information independent of the primary question, e.g. the names of the persons involved in applying for the patents and the amount of money Hunter paid for the patent rights, and would necessitate a separate inquiry by Hunter.  Each of these subparts will be counted as separate interrogatories.

The same is true for Interrogatory No. 2.  The first two subparts which seek the name of the marked product and the model number of the marked product in order to identify the product will be counted as one along with the primary question.  Each of the remaining subparts will be counted as separate interrogatories. As for Interrogatory No. 3, each subpart will be considered a separate interrogatory.

Therefore, Hunter is required to answer Interrogatories 1, 2, and 3(i)-(vi) with respect to the ten patents and nine products listed in the complaint.  The motion to compel is granted to the extent Hunter has not answered these interrogatories.  Hunter is not required to answer the remaining interrogatories nor to provide answers related to any patents or products not listed in the complaint.

III.  CONCLUSION

In sum, the motion to compel is granted in part and denied in

10

part.   Hunter shall serve its supplemental responses within fourteen days of the date of this order.

IT IS SO ORDERED this 21st day of December, 2010.


S/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE

11

# Exhibit J

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| KERANOS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SILICON STORAGE TECHNOLOGY, | § | |
| INC., et al., | § | |
| | § | Civil Action No. 2:13-cv-17 (MHS) |
| Defendants, | § | |
| Counterclaim-Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| KERANOS, LLC, et al., | § | |
| | § | |
| Counterclaim-Defendants. | § | |

**DEFENDANT MICROCHIP TECHNOLOGY INC.'S RESPONSES AND OBJECTIONS
TO PLAINTIFF KERANOS LLC'S SECOND SET OF INTERROGATORIES
(NOS. 8-19; SST NOS. 10-21) TO MANUFACTURING ENTITIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Microchip Technology Inc. ("Microchip" or "Defendant"), through its attorneys, responds to *Plaintiff Keranos, LLC's Second Set of Interrogatories (Nos. 8-19; SST Nos. 10-21) to Manufacturing Entities)* ("Plaintiff's Interrogatories") served by plaintiff Keranos, LLC ("Keranos") on January 10, 2013, as follows.

**GENERAL OBJECTIONS**

1.     Defendant responds generally that its investigation of the facts relevant to this investigation are ongoing.   Defendant's responses herein are given without prejudice to Defendant's right to amend or supplement in accordance with Rule 26(e) of the Federal Rules of Civil Procedure, the Civil Local Rules, the Local Patent Rules, any applicable Standing Orders, and the Docket Control Order entered by the Court (Dkt. No. 445).

2.      Defendant generally objects to Plaintiff's Interrogatories, and the "Definitions and Instructions" related thereto, to the extent they are inconsistent with, or impose obligations beyond those required by the Federal Rules of Civil Procedure, the Civil Local Rules, the Patent Local Rules, any applicable Standing Orders, and the Docket Control Order entered by the Court (Dkt. No. 445).  In responding to each Interrogatory, Defendant will respond as required under Rule 33 of the Federal Rules of Civil Procedure.

3.      Defendant generally objects to Plaintiff's Interrogatories on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.  For example, interrogatories that seek information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent.  Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts.  Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product.

4.      Defendant generally objects to Plaintiff's definitions of terms used in any of the patents-in-suit.    Defendant's use of Plaintiff's definitions in its response is without acknowledging, agreeing, or conceding in any way that these definitions reflect the meaning of the terms as they are used in their respective patent(s) and/or would be understood by one of skill in the art related thereto.  Defendant's responses are based on its understanding of the terms used in the patents-in-suit, not Plaintiff's.

5.      Defendant generally objects to Plaintiff's definition of "Relevant Time Period" as there is no period of recoverable damages because the patent owner, United Module, has not asserted a claim of infringement of any of the patents-in-suit.  Defendant will construe the phrase "Relevant Time Period" to mean the time period for recoverable damages under 35 U.S.C. §§ 286 and 154(2) assuming United Module had been included as a Plaintiff to the instant suit. For the '719 patent, this period is June 23, 2004 through January 3, 2006 (the expiration date of the '719 patent) for the manufacturing entities other than SST.  For SST, there is no period for which damages may be recovered because the '719 patent expired more than six years prior to Keranos's allegations that SST infringed that patent.  For the '629 patent, this period is June 23, 2004 through September 19, 2006 (the expiration date of the '629 patent).  For the '009 patent, this period is June 23, 2004 through December 9, 2008 (the expiration date of the '009 patent).

6.      Defendant generally objects to Plaintiff's Interrogatories to the extent:  (a) they are not reasonably calculated to lead to the discovery of admissible evidence; (b) they are unreasonably cumulative or duplicative; (c) they seek information that has already been provided to Plaintiff or is already obtainable from some other source that is more convenient, less burdensome, or less expensive; (d) the burden or expense of the proposed discovery outweighs any likely benefit; or (e) they seek information that is not known to Defendant and is outside of Defendant's possession, custody, and control.

7.      Defendant generally objects to Plaintiff's Interrogatories to the extent they seek information protected from discovery by the attorney-client privilege, the work product doctrine, the common interest privilege, and/or any other applicable privilege, immunity, or protection. Nothing contained in Defendant's responses is intended to be, or in any way shall be deemed, a waiver of any such applicable privilege or doctrine.

**DEFENDANT MICROCHIP TECHNOLOGY INC.'S RESPONSES AND OBJECTIONS TO KERANOS, LLC'S SECOND SET OF INTERROGATORIES (NOS. 8-19; SST NOS. 10-21)**

8.    Defendant objects to each interrogatory to the extent it calls for a legal conclusion.  Defendant's responses shall not be construed as providing a legal conclusion.

9.    Defendant incorporates by reference these General Objections into the specific objections and responses set forth below.  While Defendant may repeat a General Objection for emphasis or some other reason, the failure to specifically refer to any General Objection does not constitute a waiver of any sort.  Moreover, subject to the requirements of Rule 33 of the Federal Rules, Defendant reserves the right to alter or amend its objections and responses set forth herein as additional facts are ascertained and analyzed.

10.    Defendant remains willing to meet and confer with respect to any of its objections to assist Plaintiff in clarifying or narrowing the scope of the requested discovery, and reserves the right to move for a protective order if agreement cannot be reached.

## SPECIFIC OBJECTIONS AND RESPONSES

Defendant's responses to Plaintiff's Interrogatories are based upon Defendant's current information and belief as a result of reasonable searches and inquiries.  Defendant reserves its right to amend and supplement its responses as it learns additional facts.

## INTERROGATORY NO. 8 (SST NO. 10):

For all "SuperFlash" memory devices manufactured by You or on Your behalf (including but not limited to the Accused Products), during the years 2004-2008, inside or outside of the United States, describe in detail the process by which the memory cells were manufactured, including all processing steps, the location of the manufacturing, all entities involved in the manufacturing and identify all documents that support Your response.

## RESPONSE:

In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrases "the process by which the memory cells were

4

manufactured," "processing steps," and "all entities involved in the manufacturing."  Defendant also objects to this Interrogatory as overbroad and unduly burdensome.  Defendant further objects to this Interrogatory to the extent it seeks information on devices manufactured "outside" the United States that is not related to any claim of infringement.  Defendants further object to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the accused instrumentalities as set forth in Plaintiff's Infringement Contentions or unrelated to subject matter allegedly claimed by the asserted claims of the Patents-in-Suit. Defendant further objects to this Interrogatory to the extent it seeks information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control.  Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present.  Defendant further objects to this Interrogatory as duplicative of at least Interrogatories No. 1 and 2. Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.  For example, interrogatories that seek information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent.  Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts.  Further, interrogatories

that seek information related to "Accused Products" may be counted as one discrete subpart per product.   Defendant similarly objects to this Interrogatory on the ground that the multiple, unrelated subparts in this Interrogatory cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.


## INTERROGATORY NO. 9 (SST NO. 11):

For all "SuperFlash" memory devices manufactured, sold, or tested by You or on Your behalf (including but not limited to the Accused Products), during the years 2004-2008, inside or outside of the United States, describe in detail how the memory cells are programmed and identify all documents that support Your response. (A complete response will include, at least, whether or not the memory devices are programmed by hot electron injection or some other program[m]ing method, a description of that programming method, the voltages and currents that are used to program the individual memory cells, how the programming power is supplied (i.e. through a charge pump), and the number of cells programmed in parallel).

## RESPONSE:

In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrases "how the memory cells are programmed," "the voltages and currents that are used to program the individual memory cells," "how the programming power is supplied," "the number of cells programmed in parallel," and "some other programming method."   Defendant also objects to this Interrogatory as overbroad and unduly burdensome. Defendant further object to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information on devices manufactured "outside" the United States.   Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks

information unrelated to the accused instrumentalities as set forth in Plaintiff's Infringement Contentions or unrelated to subject matter allegedly claimed by the asserted claims of the Patents-in-Suit.  Defendant further objects to this Interrogatory to the extent it seeks information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control.   Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present.  Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.   For example, interrogatories that seek information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent.  Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts.  Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product.  Defendant similarly objects to this Interrogatory on the ground that the multiple, unrelated subparts in this Interrogatory cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 10 (SST NO. 12):**

      If You manufactured SuperFlash memory or had a third-party manufacture SuperFlash memory on Your behalf during the years 2004-2008, inside or outside of the United States, provide the dates and locations of the product manufacturing by the specific model number (including the internal product name, product generation, alias, market name etc.) and manufacturer, and identify all documents that support Your response.

**RESPONSE:**

      In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrases "product generation," "alias," and "market name." Defendant also objects to this Interrogatory as overbroad and unduly burdensome.  Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information on devices manufactured "outside" the United States.  Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the accused instrumentalities as set forth in Plaintiff's Infringement Contentions or unrelated to subject matter allegedly claimed by the asserted claims of the Patents-in-Suit. Defendant further objects to this Interrogatory to the extent it seeks information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control.  Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present.  Defendant further objects to this Interrogatory as duplicative of at least Interrogatories No. 1 and 2. Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure. For example, interrogatories that seek information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent. Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts. Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product.

**INTERROGATORY NO. 11 (SST NO. 13):**

Describe in detail all testing performed on the SuperFlash memory in each Accused Product, including how, where and by whom the testing was performed, and identify all documents that support Your response.

**RESPONSE:**

In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrase "testing performed on the SuperFlash memory." Defendant also objects to this Interrogatory as overbroad and unduly burdensome. Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information on testing performed outside the United States. Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the

accused instrumentalities as set forth in Plaintiff's Infringement Contentions or unrelated to subject matter allegedly claimed by the asserted claims of the Patents-in-Suit. Defendant further objects to this Interrogatory to the extent it seeks information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control. Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present. Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure. For example, interrogatories that seek information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent. Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts. Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product. Defendant similarly objects to this Interrogatory on the ground that the multiple, unrelated subparts in this Interrogatory cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 12 (SST NO. 14):**

Identify any and all individuals and/or entities who sold Your Accused Products in the United States or imported them into the United States, including the names, addresses, and phone numbers, as well as the identification of the Accused Product (including the internal product name, alias, market name etc.) and identify all documents that support Your response.

**RESPONSE:**

In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrases "alias" and "market name." Defendant also objects to this Interrogatory as overbroad and unduly burdensome. Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information related to sales or imports outside of the time period for which Plaintiff may seek damages under 35 U.S.C. §§ 286 and 154(2). Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the accused instrumentalities as set forth in Plaintiff's Infringement Contentions or unrelated to subject matter allegedly claimed by the asserted claims of the Patents-in-Suit. Defendant further objects to this Interrogatory to the extent it seeks information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control. Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present. Defendant further objects to this Interrogatory as duplicative of at least Interrogatory No. 4. Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number

of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.  For example, interrogatories that seek information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent.  Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts.  Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product.

## INTERROGATORY NO. 13 (SST NO. 15):

Identify all Accused Products sold or imported in or into the United States by You or on Your behalf, including, for each sale, the date, location, buyer, and product name, and/or SuperFlash part (as well as the internal product name, product generation, alias, market name etc.) and identify all documents that support Your response.

## RESPONSE:

In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrases "product generation," "alias," and "market name." Defendant also objects to this Interrogatory as overbroad and unduly burdensome.  Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information related to sales or imports outside of the time period for which Plaintiff may seek damages under 35 U.S.C. §§ 286 and 154(2).  Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the accused instrumentalities as set forth in Plaintiff's Infringement Contentions or unrelated to subject

matter allegedly claimed by the asserted claims of the Patents-in-Suit.  Defendant further objects to this Interrogatory to the extent it seeks information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control.  Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present.  Defendant further objects to this Interrogatory as duplicative of at least Interrogatory No. 1.  Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.  For example, interrogatories that seek information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent.  Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts.  Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product.

**INTERROGATORY NO. 14 (SST NO. 16):**

Identify the three (3) persons most knowledgeable regarding the design, function, and testing of the Accused Product, including their position and employer.

**RESPONSE:**

In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrase "persons most knowledgeable regarding the design, function, and testing of the Accused Product."  Defendant also objects to this Interrogatory as overbroad and unduly burdensome.  Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information outside of the time period for which Plaintiff may seek damages under 35 U.S.C. §§ 286 and 154(2).  Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the accused instrumentalities as set forth in Plaintiff's Infringement Contentions or unrelated to subject matter allegedly claimed by the asserted claims of the Patents-in-Suit. Defendant further objects to this Interrogatory to the extent it seeks information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control.  Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present.  Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.   For example, interrogatories that seek

information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent.  Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification or persons may be counted as four (4) discrete subparts.  Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product.  Defendant similarly objects to this Interrogatory on the ground that the multiple, unrelated subparts in this Interrogatory cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.


**INTERROGATORY NO. 15 (SST NO. 17):**

Identify the three (3) persons most knowledgeable regarding the manufacture and production of each of Your Accused Products, including their position and employer.

**RESPONSE:**

In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrase "persons most knowledgeable regarding the manufacture and production of each of Your Accused Products."  Defendant also objects to this Interrogatory as overbroad and unduly burdensome.  Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information outside of the time period for which Plaintiff may seek damages under 35 U.S.C. §§ 286 and 154(2).  Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the accused instrumentalities as set forth in Plaintiff's Infringement

Contentions or unrelated to subject matter allegedly claimed by the asserted claims of the Patents-in-Suit.  Defendant further objects to this Interrogatory to the extent it seeks information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control.   Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present.  Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.   For example, interrogatories that seek information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent.  Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts.  Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product.  Defendant similarly objects to this Interrogatory on the ground that the multiple, unrelated subparts in this Interrogatory cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 16 (SST NO. 18):**

Identify the three (3) persons most knowledgeable regarding the sales and marketing of each of Your Accused Products in the United States, including their position and employer.

**RESPONSE:**

In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrase "persons most knowledgeable regarding the sales and marketing of each of Your Accused Products." Defendant also objects to this Interrogatory as overbroad and unduly burdensome. Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information outside of the time period for which Plaintiff may seek damages under 35 U.S.C. §§ 286 and 154(2). Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the accused instrumentalities as set forth in Plaintiff's Infringement Contentions or unrelated to subject matter allegedly claimed by the asserted claims of the Patents-in-Suit. Defendant further objects to this Interrogatory to the extent it seeks information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control. Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present. Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order

submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure. For example, interrogatories that seek information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent. Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts. Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product. Defendant similarly objects to this Interrogatory on the ground that the multiple, unrelated subparts in this Interrogatory cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.

## INTERROGATORY NO. 17 (SST NO. 19):

Separately for each patent-in-suit, describe in detail the circumstances in which You first became aware of each of the Asserted Patents, including the date You learned of each of their existence and the identification of all documents that support Your response.

## RESPONSE:

In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrase "the circumstances in which You first became aware of each of the Asserted Patents." Defendant also objects to this Interrogatory as overbroad and unduly burdensome. Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the accused instrumentalities as set forth in Plaintiff's Infringement Contentions or unrelated to subject matter allegedly claimed by the

asserted claims of the Patents-in-Suit. Defendant further objects to this Interrogatory to the extent it seeks information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control. Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present. Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation. Defendant further objects to this Interrogatory to the extent it seeks information protected by the attorney client privilege, the attorney work product privilege, or other applicable privilege.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure. For example, interrogatories that seek information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent. Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts. Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product. Defendant similarly objects to this Interrogatory on the ground that the multiple, unrelated subparts in this Interrogatory cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.

**INTERROGATORY NO. 18 (SST NO. 20):**

Describe in detail any design changes that You have undertaken or considered for purpose of avoiding infringement of the Asserted Patents.

**RESPONSE:**

In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrases "design changes" and "for purpose of avoiding infringement."   Defendant also objects to this Interrogatory as overbroad and unduly burdensome.  Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the accused instrumentalities as set forth in Plaintiff's Infringement Contentions or unrelated to subject matter allegedly claimed by the asserted claims of the Patents-in-Suit.  Defendant further objects to this Interrogatory to the extent it seeks information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control.  Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present.  Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation. Defendant further objects to this Interrogatory to the extent it seeks information protected by the attorney client privilege, the attorney work product privilege, or other applicable privilege.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.   For example, interrogatories that seek

information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent.  Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts.  Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product.  Defendant similarly objects to this Interrogatory on the ground that the multiple, unrelated subparts in this Interrogatory cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.


## INTERROGATORY NO. 19 (SST NO. 21):

Describe in detail how royalties were paid/calculated under the SuperFlash License from 2004-2008 for the United States market, including the identification of all products (including internal product names/alias) that fell within the scope of the license, how the products were identified to SST, and identify by Bates number all royalty reports.

## RESPONSE:

In addition to its General Objections, Defendant objects to this Interrogatory as vague and ambiguous in the use of the phrases "the SuperFlash License," "product names/alias," "fell within the scope of the license," "how the products were identified to SST," and "royalty reports."  Defendant also objects to this Interrogatory as overbroad and unduly burdensome.  Defendant further objects to this Interrogatory as not relevant to any claim or defense in this lawsuit and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information unrelated to the accused instrumentalities as set forth in Plaintiff's Infringement Contentions or unrelated to subject matter allegedly claimed by the asserted claims of the Patents-in-Suit.  Defendant further objects to this Interrogatory to the extent it seeks

information not kept in the ordinary course of Defendant's business and/or not within Defendant's possession custody or control.  Defendant further objects to this Interrogatory to the extent it seeks information that is not available due to the passage of time from the relevant time period to present.  Defendant further objects to this Interrogatory as seeking information that Plaintiff can derive or ascertain based on documents already produced in this litigation.  Defendant further objects to this Interrogatory to the extent it requires a legal conclusion.

Defendant further objects to this Interrogatory on the ground that the multiple, unrelated subparts in Plaintiff's First Set of Interrogatories served January 31, 2012, cause the total number of interrogatories to exceed the limit to which Plaintiff agreed in the Proposed Discovery Order submitted to the Court on October 21, 2011 (*see* Dkt. No. 442), or alternatively, the limit set by Rule 33 of the Federal Rules of Civil Procedure.  For example, interrogatories that seek information related to the "Patents-in-Suit" may be counted as one discrete subpart per asserted patent.  Additionally, interrogatories that seek facts, legal basis, identification of documents, and identification of persons may be counted as four (4) discrete subparts.  Further, interrogatories that seek information related to "Accused Products" may be counted as one discrete subpart per product.

Dated:  February 13, 2013                    Respectfully submitted,

                                             /s/ Brian C. Banner
                                             Jeffrey D. Mills
                                             Bruce W. Slayden II (TX Bar No. 18496695)
                                             LEAD COUNSEL
                                             bslayden@kslaw.com
                                             Jeffrey D. Mills (TX Bar No. 24034203)
                                             jmills@kslaw.com
                                             Brian C. Banner (TX Bar No. 24059416)
                                             bbanner@kslaw.com
                                             Amina S. Dammann (TX Bar No. 24062687)
                                             adammann@kslaw.com
                                             KING & SPALDING LLP
                                             401 Congress Avenue, Suite 3200
                                             Austin, Texas 78701
                                             Telephone: 512.457.2000
                                             Fax: 512.457.2100

                                             *Attorneys for Defendant Microchip Technology Inc.*

DEFENDANT MICROCHIP TECHNOLOGY INC.'S RESPONSES AND OBJECTIONS TO
KERANOS, LLC'S SECOND SET OF INTERROGATORIES (NOS. 8-19; SST NOS. 10-21)

## CERTIFICATE OF SERVICE

I hereby certify that on this day, February 13, 2013, I served a true and correct copy of Defendant Microchip Technology Inc.'s Responses and Objections to Keranos, LLC's Second Set of Interrogatories (Nos. 8-19, SST Nos. 10-21) on the following individuals:

| Counsel for Plaintiff and Counterclaim-Defendant Keranos, LLC and for Crossclaim-Defendants United Module Corp., J. Nicholas Gross and Peter Courture | | |
|---|---|---|
| James C. Otteson | ( ) | Via First Class Mail |
| *Agility IP Law, LLP* | ( ) | Via Hand Delivery |
| 149 Commonwealth Drive, Suite 1033 | ( ) | Overnight Courier |
| Menlo Park, CA 94025 | ( ) | Via Facsimile |
| Email: jim@agilityiplaw.com | (X) | Via Email (.pdf copy) |
| | | |
| Michelle G. Breit | ( ) | Via First Class Mail |
| John W. Downing | ( ) | Via Hand Delivery |
| *Otteson Law Group* | ( ) | Overnight Courier |
| *Agility IP Law, LLP* | ( ) | Via Facsimile |
| 14350 North 87th Street, Suite 190 | (X) | Via Email (.pdf copy) |
| Scottsdale, AZ 85260 | | |
| Email: mbreit@agilityiplaw.com | | |
| Email: jdowning@agilityiplaw.com | | |
| | | |
| Andrew W. Spangler | ( ) | Via First Class Mail |
| *SPANGLER LAW PC* | ( ) | Via Hand Delivery |
| 208 N. Green St., Suite 300 | ( ) | Overnight Courier |
| Longview, TX 75601 | ( ) | Via Facsimile |
| Email: spangler@ spanglerlawpc.com | (X) | Via Email (.pdf copy) |
| **Counsel for Defendants Epson America, Inc. and Seiko Epson Corporation** | | |
| Richard de Bodo | ( ) | Via First Class Mail |
| Andrew V. Devkar (pro hac vice) | ( ) | Via Hand Delivery |
| Richard de Bodo | ( ) | Overnight Courier |
| DLA Piper LLP | ( ) | Via Facsimile |
| 2000 Avenue of the Stars, Suite 400 | (X) | Via Email (.pdf copy) |
| Los Angeles, CA 90067 | | |
| Telephone: 310-595-3000 | | |
| Fax: 310-595-3300 | | |
| andrew.devkar@dlapiper.com | | |
| richard.debodo@dlapiper.com | | |
| | | |
| J. Thad Heartfield (Local) | ( ) | Via First Class Mail |
| M. Dru Montgomery | ( ) | Via Hand Delivery |

| The Heartfield Law Firm<br>2195 Dowlen Rd.<br>Beaumont, TX 77706<br>Telephone: 409-866-3318<br>Fax: 409-866-5789<br>thad@jth-law.com<br>dru@jth-law.com | ( )<br>( )<br>(X) | Overnight Courier<br>Via Facsimile<br>Via Email (.pdf copy) |
|---|---|---|

**Counsel for Defendant Freescale Semiconductor, Inc.**

| Bruce W. Slayden, II (Lead)<br>Jeffrey David Mills<br>Brian C. Banner<br>Amina S. Dammann<br>*KING &SPALDING LLP*<br>401 Congress, Suite 3200<br>Austin, TX 78701<br>Email: bslayden@kslaw.com<br>Email: jmills@kslaw.com<br>Email: bbanner@kslaw.com<br>Email: adammann@kslaw.com | ( )<br>( )<br>( )<br>( )<br>(X) | Via First Class Mail<br>Via Hand Delivery<br>Overnight Courier<br>Via Facsimile<br>Via Email (.pdf copy) |
|---|---|---|
| David L. Witcoff<br>*JONES DAY*<br>77 W. Wacker Dr.<br>Chicago, IL 60601-1692<br>Email: dlwitcoff@jonesday.com | ( )<br>( )<br>( )<br>( )<br>(X) | Via First Class Mail<br>Via Hand Delivery<br>Overnight Courier<br>Via Facsimile<br>Via Email (.pdf copy) |

**Counsel for Defendant Silicon Storage Technology, Inc.**

| Bruce W. Slayden, II (Lead)<br>Jeffrey David Mills<br>Brian C. Banner<br>Amina S. Dammann<br>*KING &SPALDING LLP*<br>401 Congress, Suite 3200<br>Austin, TX 78701<br>Email: bslayden@kslaw.com<br>Email: jmills@kslaw.com<br>Email: bbanner@kslaw.com<br>Email: adammann@kslaw.com | ( )<br>( )<br>( )<br>( )<br>(X) | Via First Class Mail<br>Via Hand Delivery<br>Overnight Courier<br>Via Facsimile<br>Via Email (.pdf copy) |
|---|---|---|

**Counsel for Defendants Samsung Semiconductor, Inc. and Samsung Electronics Co. Ltd.**

| Bruce W. Slayden, II (Lead)<br>Jeffrey David Mills<br>Brian C. Banner<br>Amina S. Dammann<br>*KING &SPALDING LLP*<br>401 Congress, Suite 3200 | ( )<br>( )<br>( )<br>( )<br>(X) | Via First Class Mail<br>Via Hand Delivery<br>Overnight Courier<br>Via Facsimile<br>Via Email (.pdf copy) |
|---|---|---|

| | | |
|---|---|---|
| Austin, TX 78701<br>Email: bslayden@kslaw.com<br>Email: jmills@kslaw.com<br>Email: bbanner@kslaw.com<br>Email: adammann@kslaw.com | | |
| John M. Caracappa<br>Paul A Gennari<br>William J Barrow<br>*STEPTOE & JOHNSON LLP*<br>1330 Connecticut Ave., NW<br>Washington, DC 20036<br>Email: jcaracappa@steptoe.com<br>Email: pgennari@steptoe.com<br>Email: wbarrow@steptoe.com | ( )<br>( )<br>( )<br>( )<br>(X) | Via First Class Mail<br>Via Hand Delivery<br>Overnight Courier<br>Via Facsimile<br>Via Email (.pdf copy) |
| *Counsel for Defendants Taiwan Semiconductor Manufacturing Company, Ltd. and TSMC North America* | | |
| Bruce W. Slayden, II (Lead)<br>Jeffrey David Mills<br>Brian C. Banner<br>Amina S. Dammann<br>*KING &SPALDING LLP*<br>401 Congress, Suite 3200<br>Austin, TX 78701<br>Email: bslayden@kslaw.com<br>Email: jmills@kslaw.com<br>Email: bbanner@kslaw.com<br>Email: adammann@kslaw.com | ( )<br>( )<br>( )<br>( )<br>(X) | Via First Class Mail<br>Via Hand Delivery<br>Overnight Courier<br>Via Facsimile<br>Via Email (.pdf copy) |
| Steven H. Slater<br>Roger C. Knapp<br>Natalie D. Swider<br>*SLATER & MATSIL, LLP*<br>17950 Preston Rd., Suite 1000<br>Dallas, TX 75252<br>Email: slater@slater-matsil.com<br>Email: knapp@slater-matsil.com<br>Email: swider@slater-matsil.com | ( )<br>( )<br>( )<br>( )<br>(X) | Via First Class Mail<br>Via Hand Delivery<br>Overnight Courier<br>Via Facsimile<br>Via Email (.pdf copy) |
| *Counsel for Defendants Toshiba Corporation and Toshiba America Electronic Components, Inc.* | | |
| Robinson Vu<br>Scott F. Partridge<br>Michael A. Hawes<br>Robinson Vu | ( )<br>( )<br>( )<br>( ) | Via First Class Mail<br>Via Hand Delivery<br>Overnight Courier<br>Via Facsimile |

26

| | |
|---|---|
| Baker Botts LLP<br>910 Louisiana Street<br>Houston, TX 77002<br>robinson.vu@bakerbotts.com<br>michael.hawes@bakerbotts.com<br>scott.partridge@bakerbotts.com<br>KeranosvToshiba@bakerbotts.com | (X)    Via Email (.pdf copy) |
| Michael Charles Smith<br>Siebman Burg Phillips & Smith, LLP-Marshall<br>113 E. Austin Street<br>Marshall, TX 75671<br>Telephone: 903-938-8900<br>Fax: 1-972-7674620<br>Email: michaelsmith@siebman.com | ( )    Via First Class Mail<br>( )    Via Hand Delivery<br>( )    Overnight Courier<br>( )    Via Facsimile<br>(X)    Via Email (.pdf copy) |

 /s/Brian C. Banner
Brian C. Banner

27